# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

HILLCREST BANK,      )
                       )
         **Plaintiff/Counterclaim** )
         **Defendant,** )    **Case No. 10-CV-00967-DGK**
                       )

and                      )
                       )    **JURY DEMAND**

DONNA RICE,          )
                       )

Serve: 1100 NW South Outer Road )
        Blue Springs, Missouri 64015, )
                       )

and                      )
                       )

JEFFREY F. WHEELER,      )
                       )

Serve: 3309 West 127th Street )
        Leawood, Kansas 66209, )
                       )

and                      )
                       )

JON FORGEY,           )
                       )

Serve: 1100 NW South Outer Road )
        Blue Springs, Missouri 64015, )
                       )

and                      )
                       )

IRWIN BLITT,          )
                       )

Serve: 3522 West 89th Street )
        Leawood, Kansas 66206, )
                       )

and                      )
                       )

THOMAS S. DREYER,       )
                       )

Serve: 1232 West 61st Street )
        Kansas City, Missouri 64113, )
                       )

and                      )
                       )

JACK N. FINGERSH,                                     )
                                                      )
Serve: 4400 West 87th Place                           )
        Overland Park, Kansas 66207,    )
                                                      )
and                                                   )
                                                      )
PAUL FINGERSH,                                        )
                                                      )
Serve: 655 West 61st Terrace                          )
        Kansas City, Missouri 64113,    )
                                                      )
and                                                   )
                                                      )
GEORGE LIEBERMAN,                                     )
                                                      )
Serve: 11504 Juniper Drive                            )
        Leawood, Kansas 66211,          )
                                                      )
and                                                   )
                                                      )
JERRY M. WHITE,                                       )
                                                      )
Serve: 1912 W 61st Terrace                            )
Prairie Village, Kansas 66208,                        )
                                                      )
and                                                   )
                                                      )
SCOTT ASNER,                                          )
                                                      )
Serve: 11000 King Street                              )
        Overland Park, Kansas 66210,    )
                                                      )
and                                                   )
                                                      )
ADAM LABODA,                                          )
                                                      )
Serve: 9831 Apple Blossom Lane                        )
        Kansas City, Missouri 64152     )
                                                      )
            Counterclaim Defendants,   )
                                                      )
      vs.                                   )
                                                      )
JACK H. CORDSEN, *et al.*,                            )
        Defendants/Counterclaimants.  )

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO HILLCREST BANK'S COMPLAINT, TOGETHER WITH JURY DEMAND

For their answer and affirmative defenses to plaintiff Hillcrest Bank's ("**Hillcrest**") claims in the Complaint (the "**Petition**"), defendants Jack H. Cordsen ("**Cordsen**"), Jack H. Cordsen Trust UTA (the "**Trust**"), Hidden Ridge Building Corporation ("**Hidden Ridge**"), and Winterberry Development, LLC ("**Winterberry**," and with Cordsen, the Trust, and Hidden Ridge, sometimes collectively, the "**Defendants**"), by their counsel, states and alleges as follows:

Unless specifically admitted in this Answer, all claims, theories, allegations and paragraphs in the Complaint are denied.

### PARTIES AND VENUE

1.      Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, and, therefore, deny the same.

2.      As to the allegations in paragraph 2 of the Complaint, Cordsen admits that he is an individual, but denies that he lives at the listed address.

3.      As to the allegations in paragraph 3 of the Complaint, the Trust admits that it is a trust and that the sole trustee is Cordsen. Further answering, the Trust denies that it may be served at the listed address.

4.      Admitted.

5.      Admitted.

6.      Paragraph 6 of the Complaint calls for a legal conclusion to which no answer is required, and, therefore, Defendants deny same.

7.     Paragraph 7 of the Complaint calls for a legal conclusion to which no answer is required, and, therefore, Defendants deny same.

8.     Paragraph 8 of the Complaint calls for a legal conclusion to which no answer is required, and, therefore, Defendants deny same.

## THE HIDDEN RIDGE LOT LOAN

9.     As to the allegations in paragraph 9 of the Complaint, Hidden Ridge states that the Hidden Ridge Lot Loan Agreement is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

10.     As to the allegations in paragraph 10 of the Complaint, Hidden Ridge states that the Hidden Ridge Lot Loan Agreement, attached as Exhibit A to the Complaint, is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Hidden Ridge Lot Loan Agreement is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether the agreement is a complete and accurate copy of the original, and, therefore, denies the same.

11.     As to the allegations in paragraph 11 of the Complaint, Hidden Ridge states that the Hidden Ridge Lot Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

12.     As to the allegations in paragraph 12 of the Complaint, Hidden Ridge states that the Hidden Ridge Lot Note, attached as Exhibit B to the Complaint, is a

written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Hidden Ridge Lot Note is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether the promissory note is a complete and accurate copy of the original, and, therefore, denies the same.

13. As to the allegations in paragraph 13 of the Complaint, Cordsen states that the Cordsen First Hidden Ridge Guaranty is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document.

14. As to the allegations in paragraph 14 of the Complaint, Cordsen states that the Cordsen First Hidden Ridge Guaranty, attached as Exhibit C to the Complaint, is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen First Hidden Ridge Guaranty is a document produced by Hillcrest Bank. Cordsen lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

15. Hidden Ridge lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, and, therefore, denies the same.

16. As to the allegations in paragraph 16 of the Complaint, Hidden Ridge states that the Fourteenth Hidden Ridge Lot Loan Modification is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

17.     As to the allegations in paragraph 17 of the Complaint, Hidden Ridge states that the Fourteenth Hidden Ridge Lot Loan Modification, attached as Exhibit D to the Complaint, is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Fourteenth Hidden Ridge Lot Loan Modification is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether this agreement is a complete and accurate copy of the original, and, therefore, denies the same.

18.     As to the allegations in paragraph 18 of the Complaint, Hidden Ridge states that the Hidden Ridge Lot Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

## THE HIDDEN RIDGE CONSTRUCTION LOAN

19.     As to the allegations in paragraph 19 of the Complaint, Hidden Ridge states that the Hidden Ridge Construction Loan Agreement is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

20.     As to the allegations in paragraph 20 of the Complaint, Hidden Ridge states that the Hidden Ridge Construction Loan Agreement, attached as Exhibit E to the Complaint, is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Hidden Ridge Construction Loan Agreement is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient

to form a belief as to whether the agreement is a complete and accurate copy of the original, and, therefore, denies the same.

21.    As to the allegations in paragraph 21 of the Complaint, Hidden Ridge states that the Hidden Ridge Construction Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

22.    As to the allegations in paragraph 22 of the Complaint, Hidden Ridge states that the Hidden Ridge Construction Note, attached as Exhibit F to the Complaint, is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Hidden Ridge Construction Note is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether the promissory note is a complete and accurate copy of the original, and, therefore, denies the same.

23.    As to the allegations in paragraph 23 of the Complaint, Cordsen states that the Cordsen Second Hidden Ridge Guaranty is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document.

24.    As to the allegations in paragraph 24 of the Complaint, Cordsen states that the Cordsen Second Hidden Ridge Guaranty, attached as Exhibit G to the Complaint, is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Second Hidden Ridge Guaranty is a document produced by Hillcrest Bank.

Cordsen lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

25. Hidden Ridge lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint, and, therefore, denies the same.

26. As to the allegations in paragraph 26 of the Complaint, Hidden Ridge states that the Sixteenth Hidden Ridge Construction Loan Modification is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

27. As to the allegations in paragraph 27 of the Complaint, Hidden Ridge states that the Sixteenth Hidden Ridge Construction Loan Modification, attached as Exhibit H to the Complaint, is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Sixteenth Hidden Ridge Construction Loan Modification is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether this agreement is a complete and accurate copy of the original, and, therefore, denies the same.

28. As to the allegations in paragraph 28 of the Complaint, Hidden Ridge states that the Hidden Ridge Construction Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

## THE HIDDEN RIDGE BRIDGE I LOAN

29.     As to the allegations in paragraph 29 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge I Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

30.     As to the allegations in paragraph 30 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge I Note, attached as Exhibit I to the Complaint, is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Hidden Ridge Bridge I Note is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether the promissory note is a complete and accurate copy of the original, and, therefore, denies the same.

31.     As to the allegations in paragraph 31 of the Complaint, Cordsen states that the Cordsen Third Hidden Ridge Guaranty is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document.

32.     As to the allegations in paragraph 32 of the Complaint, Cordsen states that the Cordsen Third Hidden Ridge Guaranty, attached as Exhibit J to the Complaint, is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Third Hidden Ridge Guaranty is a document produced by Hillcrest Bank. Cordsen lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

33.     As to the allegations in paragraph 33 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge I Loan Modification is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

34.     As to the allegations in paragraph 34 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge I Loan Modification, attached as Exhibit K to the Complaint, is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Hidden Ridge Bridge I Loan Modification is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether this agreement is a complete and accurate copy of the original, and, therefore, denies the same.

35.     As to the allegations in paragraph 35 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge I Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

## THE HIDDEN RIDGE BRIDGE II LOAN

36.     As to the allegations in paragraph 36 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge II Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

37.     As to the allegations in paragraph 37 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge II Note, attached as Exhibit L to the Complaint, is a

written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Hidden Ridge Bridge II Note is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether the promissory note is a complete and accurate copy of the original, and, therefore, denies the same.

38.     As to the allegations in paragraph 38 of the Complaint, Cordsen states that the Cordsen Fourth Hidden Ridge Guaranty is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document.

39.     As to the allegations in paragraph 39 of the Complaint, Cordsen states that the Cordsen Fourth Hidden Ridge Guaranty, attached as Exhibit M to the Complaint, is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Fourth Hidden Ridge Guaranty is a document produced by Hillcrest Bank. Cordsen lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

40.     As to the allegations in paragraph 40 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge II Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

### THE CORDSEN TRUST HIDDEN RIDGE GUARANTIES

41.     As to the allegations in paragraph 41 of the Complaint, the Trust states that the Cordsen Trust First Guaranty is a written document and, therefore, speaks for

itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document.

42.     As to the allegations in paragraph 42 of the Complaint, the Trust states that the Cordsen Trust First Guaranty, attached as Exhibit N to the Complaint, is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Trust First Guaranty is a document produced by Hillcrest Bank. The Trust lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

43.     As to the allegations in paragraph 43 of the Complaint, the Trust states that the Cordsen Trust Second Guaranty is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document.

44.     As to the allegations in paragraph 44 of the Complaint, the Trust states that the Cordsen Trust Second Guaranty, attached as Exhibit O to the Complaint, is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Trust Second Guaranty is a document produced by Hillcrest Bank. The Trust lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

45.     As to the allegations in paragraph 45 of the Complaint, the Trust states that the Cordsen Trust Third Guaranty is a written document and, therefore, speaks for

itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document.

46. As to the allegations in paragraph 46 of the Complaint, the Trust states that the Cordsen Trust Third Guaranty, attached as Exhibit P to the Complaint, is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Trust Third Guaranty is a document produced by Hillcrest Bank. The Trust lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

## THE WINTERBERRY DEVELOPMENT, LLC LOAN

47. As to the allegations in paragraph 47 of the Complaint, Winterberry states that the Winterberry Loan Agreement is a written document and, therefore, speaks for itself. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast that document.

48. As to the allegations in paragraph 48 of the Complaint, Winterberry states that the Winterberry Loan Agreement, attached as Exhibit Q to the Complaint, is a written document and, therefore, speaks for itself. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Winterberry Loan Agreement is a document produced by Hillcrest Bank. Winterberry lacks knowledge and information sufficient to form a belief as to whether the agreement is a complete and accurate copy of the original, and, therefore, denies the same.

49. As to the allegations in paragraph 49 of the Complaint, Winterberry states that the Winterberry Note is a written document and, therefore, speaks for itself.

Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast that document.

50. As to the allegations in paragraph 50 of the Complaint, Winterberry states that the Winterberry Note, attached as Exhibit R to the Complaint, is a written document and, therefore, speaks for itself. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Winterberry Note is a document produced by Hillcrest Bank. Winterberry lacks knowledge and information sufficient to form a belief as to whether the promissory note is a complete and accurate copy of the original, and, therefore, denies the same.

51. As to the allegations in paragraph 51 of the Complaint, Cordsen states that the Cordsen Winterberry Guaranty is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document.

52. As to the allegations in paragraph 52 of the Complaint, Cordsen states that the Cordsen Winterberry Guaranty, attached as Exhibit S to the Complaint, is a written document and, therefore, speaks for itself. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Winterberry Guaranty is a document produced by Hillcrest Bank. Cordsen lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

53. As to the allegations in paragraph 53 of the Complaint, the Trust states that the Cordsen Trust First Winterberry Guaranty is a written document and, therefore,

speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document.

54.    As to the allegations in paragraph 54 of the Complaint, the Trust states that the Cordsen Trust First Winterberry Guaranty, attached as Exhibit T to the Complaint, is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Trust First Winterberry Guaranty is a document produced by Hillcrest Bank. The Trust lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

55.    As to the allegations in paragraph 55 of the Complaint, the Trust states that the Cordsen Trust Second Winterberry Guaranty is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document.

56.    As to the allegations in paragraph 56 of the Complaint, the Trust states that the Cordsen Trust Second Winterberry Guaranty, attached as Exhibit U to the Complaint, is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Trust Second Winterberry Guaranty is a document produced by Hillcrest Bank. The Trust lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

57.     As to the allegations in paragraph 57 of the Complaint, the Trust states that the Cordsen Trust Third Winterberry Guaranty is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document.

58.     As to the allegations in paragraph 58 of the Complaint, the Trust states that the Cordsen Trust Third Winterberry Guaranty, attached as Exhibit V to the Complaint, is a written document and, therefore, speaks for itself. The Trust specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the Cordsen Trust Third Winterberry Guaranty is a document produced by Hillcrest Bank. The Trust lacks knowledge and information sufficient to form a belief as to whether the guaranty is a complete and accurate copy of the original, and, therefore, denies the same.

59.     Winterberry lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Complaint, and, therefore, denies the same.

60.     As to the allegations in paragraph 60 of the Complaint, Winterberry states that the Eighth Winterberry Loan Modification is a written document and, therefore, speaks for itself. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast that document.

61.     As to the allegations in paragraph 61 of the Complaint, Winterberry states that the Eighth Winterberry Loan Modification, attached as Exhibit W to the Complaint, is a written document and, therefore, speaks for itself. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the

Eighth Winterberry Loan Modification is a document produced by Hillcrest Bank. Winterberry lacks knowledge and information sufficient to form a belief as to whether this agreement is a complete and accurate copy of the original, and, therefore, denies the same.

62.    As to the allegations in paragraph 62 of the Complaint, Winterberry states that the Winterberry Note is a written document and, therefore, speaks for itself. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast that document.

## FAILURES TO MAKE PAYMENTS

63.    As to the allegations in paragraph 63 of the Complaint, Hidden Ridge states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Lot Note, the Hidden Ridge Lot Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

64.    As to the allegations in paragraph 64 of the Complaint, Hidden Ridge states that the Hidden Ridge Lot Loan Agreement and Hidden Ridge Lot Note are written documents and, therefore, speak for themselves.  Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast these documents.  Further answering, Hidden Ridge states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Lot Note, the Hidden Ridge Lot Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

65.     As to the allegations in paragraph 65 of the Complaint, Hidden Ridge states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Construction Note, the Hidden Ridge Construction Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

66.     As to the allegations in paragraph 66 of the Complaint, Hidden Ridge states that the Hidden Ridge Construction Loan Agreement and Hidden Ridge Construction Note are written documents and, therefore, speak for themselves. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast these documents. Further answering, Hidden Ridge states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Construction Note, the Hidden Ridge Construction Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

67.     As to the allegations in paragraph 67 of the Complaint, Hidden Ridge states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Bridge I Note, the Hidden Ridge Bridge I Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

68.     As to the allegations in paragraph 68 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge I Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast this document. Further answering, Hidden Ridge states that due to Hillcrest's

actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Bridge I Note, the Hidden Ridge Bridge I Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

69.     As to the allegations in paragraph 69 of the Complaint, Hidden Ridge states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Bridge II Note, the Hidden Ridge Bridge II Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

70.     As to the allegations in paragraph 70 of the Complaint, Hidden Ridge states that the Hidden Ridge Bridge II Note is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast this document. Further answering, Hidden Ridge states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Hidden Ridge Bridge II Note, the Hidden Ridge Bridge II Note had not matured, was not due, or Hidden Ridge did not owe the amount that Hillcrest claimed was due, and, therefore, Hidden Ridge denies the allegations in this paragraph.

71.     As to the allegations in paragraph 71 of the Complaint, Hidden Ridge states that the referenced letter is a written document and, therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document.

72.     As to the allegations in paragraph 72 of the Complaint, Hidden Ridge states that the letter, attached as Exhibit X to the Complaint, is a written document and,

therefore, speaks for itself. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast that document. Further answering, the letter is a document produced by Hillcrest Bank. Hidden Ridge lacks knowledge and information sufficient to form a belief as to whether the letter is a complete and accurate copy of the original, and, therefore, denies the same.

73.    As to the allegations in paragraph 73 of the Complaint, Hidden Ridge states that it did not owe the amounts that Hillcrest claimed was due in the letter, and, therefore, Hidden Ridge denies the allegations in this paragraph.

74.    As to the allegations in paragraph 74 of the Complaint, Cordsen and the Trust state that the referenced letter is a written document and, therefore, speaks for itself. Cordsen and the Trust specifically deny any attempt by Hillcrest to recharacterize or recast that document.

75.    As to the allegations in paragraph 75 of the Complaint, Cordsen and the Trust state that the letter, attached as Exhibit Y to the Complaint, is a written document and, therefore, speaks for itself. Cordsen and the Trust specifically deny any attempt by Hillcrest to recharacterize or recast that document. Further answering, the letter is a document produced by Hillcrest Bank. Cordsen and the Trust lack knowledge and information sufficient to form a belief as to whether the letter is a complete and accurate copy of the original, and, therefore, deny the same.

76.    As to the allegations in paragraph 76 of the Complaint, Cordsen and the Trust state that they did not owe the amounts that Hillcrest claimed was due in the letter, and, therefore, Cordsen and the Trust deny the allegations in this paragraph.

77.     As to the allegations in paragraph 77 of the Complaint, Winterberry states that due to Hillcrest's actions and course of conduct the Hillcrest was the first to breach the Winterberry Note, the Winterberry Note had not matured, was not due, or Winterberry did not owe the amount that Hillcrest claimed was due, and, therefore, Winterberry denies the allegations in this paragraph.

78.     As to the allegations in paragraph 78 of the Complaint, Winterberry states that the Winterberry Loan Agreement and Winterberry Note are written documents and, therefore, speak for themselves. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast these documents. Further answering, Winterberry states that due to Hillcrest's actions and course of conduct Hillcrest was the first to breach the Winterberry Note, the Winterberry Note had not matured, was not due, or Winterberry did not owe the amount that Hillcrest claimed was due, and, therefore, Winterberry denies the allegations in this paragraph.

79.     As to the allegations in paragraph 79 of the Complaint, Winterberry, Cordsen and the Trust state that the referenced letter is a written document and, therefore, speaks for itself. Winterberry, Cordsen and the Trust specifically deny any attempt by Hillcrest to recharacterize or recast that document.

80.     As to the allegations in paragraph 80 of the Complaint, Winterberry, Cordsen and the Trust state that the letter, attached as Exhibit Z to the Complaint, is a written document and, therefore, speaks for itself. Winterberry, Cordsen and the Trust specifically deny any attempt by Hillcrest to recharacterize or recast that document. Further answering, the letter is a document produced by Hillcrest Bank. Winterberry, Cordsen and the Trust lack knowledge and information sufficient to form a belief as to

whether the letter is a complete and accurate copy of the original, and, therefore, deny the same.

81.     As to the allegations in paragraph 81 of the Complaint, Winterberry, Cordsen and the Trust state that they did not owe the amounts that Hillcrest claimed was due in the letter, and, therefore, Winterberry, Cordsen and the Trust deny the allegations in this paragraph.

82.     As to the allegations in paragraph 82 of the Complaint, Cordsen admits that he met with Hillcrest Bank and that he refused to pay the amounts that Hillcrest claimed were due under the various loans because these amounts were incorrect. Cordsen denies the remaining allegations in paragraph 82 of the Complaint.

## COUNT I:  BREACH OF HIDDEN RIDGE LOT AND CONSTRUCTION LOAN GUARANTIES
### (Against Cordsen and the Trust)

83.     Defendants restate and incorporate their responses in paragraphs 1 through 82.

84.     Denied.

85.     Denied.

86.     As to the allegations in paragraph 86 of the Complaint, Cordsen and the Trust admit that demand was made on them for payment, but not for the proper amounts due.  Cordsen and the Trust deny the remaining allegations in this paragraph.

87.     As to the allegations in paragraph 87 of the Complaint, Cordsen and the Trust admit that demand was made on them for payment, but not for the proper amounts due.  Cordsen and the Trust deny the remaining allegations in this paragraph.

88.     Denied.

89.     Denied.

90.     As to the allegations in paragraph 90 of the Complaint, Cordsen and the Trust state that the referenced documents are written documents and, therefore, speak for themselves. Cordsen and the Trust specifically deny any attempt by Hillcrest to recharacterize or recast these documents. Further answering, Cordsen and the Trust deny that Hillcrest is entitled to recover any fees from the cost of collection in that it is Hillcrest that first breached the agreements in question.

**WHEREFORE**, for the reasons set forth above, defendants Jack H. Cordsen and the Jack H Cordsen Trust UTA dated February 12, 2007, request that Hillcrest Bank take nothing on Count I of the Complaint, that the Complaint be dismissed, that a judgment be entered in favor of Cordsen and the Trust for their reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II:  BREACH OF HIDDEN RIDGE BRIDGE I AND II LOAN GUARANTIES
### (Against Cordsen)

91.     Defendants restate and incorporate their responses in paragraphs 1 through 90.

92.     Denied.

93.     Denied.

94.     As to the allegations in paragraph 94 of the Complaint, Cordsen admits that demand was made on him for payment, but not for the proper amounts due. Cordsen denies the remaining allegations in this paragraph.

95.     Denied.

96.     Denied.

97.     As to the allegations in paragraph 97 of the Complaint, Cordsen states that the referenced documents are written documents and, therefore, speak for themselves. Cordsen specifically denies any attempt by Hillcrest to recharacterize or recast these documents.  Further answering, Cordsen denies that Hillcrest is entitled to recover any fees from the cost of collection in that it is Hillcrest that first breached the agreements in question.

**WHEREFORE**, for the reasons set forth above, defendant Jack H. Cordsen requests that Hillcrest Bank take nothing on Count II of the Complaint, that the Complaint be dismissed, that a judgment be entered in favor of Cordsen for his reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

### COUNT III:  BREACH OF HIDDEN RIDGE LOT LOAN AGREEMENT AND NOTE, HIDDEN RIDGE CONSTRUCTION AGREEMENT AND NOT, HIDDEN RIDGE BRIDGE I AND II LOAN AGREEMENTS AND NOTES (Against Hidden Ridge Building Corporation)

98.     Defendants restate and incorporate their responses in paragraphs 1 through 97.

99.     Denied.

100.     As to the allegations in paragraph 100 of the Complaint, Hidden Ridge admits that demand was made on it for payment, but not for the proper amounts due. Hidden Ridge denies the remaining allegations in this paragraph.

101.     Denied.

102.     Denied.

103.     As to the allegations in paragraph 103 of the Complaint, Hidden Ridge states that the referenced documents are written documents and, therefore, speak for

themselves. Hidden Ridge specifically denies any attempt by Hillcrest to recharacterize or recast these documents. Further answering, Hidden Ridge denies that Hillcrest is entitled to recover any fees from the cost of collection in that it is Hillcrest that first breached the agreements in question.

**WHEREFORE**, for the reasons set forth above, defendant Hidden Ridge Building Corporation requests that Hillcrest Bank take nothing on Count III of the Complaint, that the Complaint be dismissed, that a judgment be entered in favor of Hidden Ridge for its reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

### COUNT IV: BREACH OF WINTERBERRY GUARANTIES
### (Against Cordsen and the Trust)

104. Defendants restate and incorporate their responses in paragraphs 1 through 103.

105. Denied.

106. Denied.

107. As to the allegations in paragraph 107 of the Complaint, Cordsen and the Trust admit that demand was made on them for payment, but not for the proper amounts due. Cordsen and the Trust deny the remaining allegations in this paragraph.

108. Denied.

109. As to the allegations in paragraph 109 of the Complaint, Cordsen and the Trust state that the referenced documents are written documents and, therefore, speak for themselves. Cordsen and the Trust specifically deny any attempt by Hillcrest to recharacterize or recast these documents. Further answering, Cordsen and the Trust deny

that Hillcrest is entitled to recover any fees from the cost of collection in that it is Hillcrest that first breached the agreements in question.

    **WHEREFORE**, for the reasons set forth above, defendants Jack H. Cordsen and the Jack H Cordsen Trust UTA dated February 12, 2007, request that Hillcrest Bank take nothing on Count IV of the Complaint, that the Complaint be dismissed, that a judgment be entered in favor of Cordsen and the Trust for their reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT V: BREACH OF THE WINTERBERRY LOAN AGREEMENT AND WINTERBERRY NOTE (Against Winterberry Development, LLC)

    110.    Defendants restate and incorporate their responses in paragraphs 1 through 109.

    111.    Denied.

    112.    As to the allegations in paragraph 112 of the Complaint, Winterberry admits that demand was made on it for payment, but not for the proper amounts due. Winterberry denies the remaining allegations in this paragraph.

    113.    Denied.

    114.    Denied.

    115.    As to the allegations in paragraph 115 of the Complaint, Winterberry states that the referenced documents are written documents and, therefore, speak for themselves. Winterberry specifically denies any attempt by Hillcrest to recharacterize or recast these documents. Further answering, Winterberry denies that Hillcrest is entitled to recover any fees from the cost of collection in that it is Hillcrest that first breached the agreements in question.

**WHEREFORE**, for the reasons set forth above, defendant Winterberry Development, LLC requests that Hillcrest Bank take nothing on Count V of the Complaint, that the Complaint be dismissed, that a judgment be entered in favor of Winterberry for its reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## <u>AFFIRMATIVE DEFENSES</u>

For their affirmative defenses to Hillcrest's Complaint, Defendants state as follows:

1.     Hillcrest's Complaint fails to state a claim upon which relief can be granted against Defendants because of Hillcrest's actions and conduct as set forth in Defendants' Counterclaim against Hillcrest and other plaintiffs, which rescinds or negates the loan documents such that there is no obligation that Defendants owe to Hillcrest under the loan documents.

2.     Hillcrest's claims are barred by its conduct and actions and by the doctrine of unclean hands.

3.     Hillcrest's claims are barred by the doctrines of waiver, estoppel, and laches based on the actions and conduct set forth in Defendants Counterclaim against Hillcrest and Cross-Claim against other defendants.

4.     Hillcrest's claims are barred by the doctrine of comparative fault.

5.     Hillcrest's claims are barred in that it has failed to mitigate its alleged damages, if any.

6.     Defendants reserve the right to plead any additional defenses as they become known through discovery in this case.

**WHEREFORE**, for the reasons set forth above, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA request that Hillcrest Bank take nothing, that the Petition be dismissed, and that a judgment be entered in Defendants' favor for its reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNTERCLAIM
### (Breach of Contract, Fraudulent Inducement, Prima Facie Tort, Negligence, Breach of Fiduciary Duty, and Violation of R.S. Mo. § 339.020)

Defendants Jack H. Cordsen ("**Cordsen**"), Jack H. Cordsen Trust UTA (the "**Trust**"), Hidden Ridge Building Corporation ("**Hidden Ridge**"), and Winterberry Development, LLC ("**Winterberry**," and with Cordsen, the Trust, and Hidden Ridge, sometimes collectively, the "**Defendants**"), by their counsel, and for their claims and causes of action (the "**Counterclaim**") against plaintiff/counterclaim defendant Hillcrest Bank ("**Hillcrest**") and counterclaim defendants Donna Rice ("**Rice**"), Jeffrey F. Wheeler ("**Wheeler**"), Jon Forgey ("**Forgey**"), Irwin Blitt ("**Blitt**"), Thomas Dreyer ("**Dreyer**"), Jack Fingersh ("**J. Fingersh**"), Paul Fingersh ("**P. Fingersh**"), George Lieberman ("**Lieberman**"), Jerry M. White ("**White**"), Scott Asner ("**Asner**," and with Blitt, Wheeler, Dryer, J. Fingersh, P. Fingersh, Lieberman, and White, collectively, the "**Directors**"), and Adam LaBoda ("**LaBoda**"), respectfully state and allege as follows:

### PARTIES AND VENUE

1.      Upon information and belief, Hillcrest is a Kansas banking corporation organized and existing under the laws of that State.

2.      Upon information and belief, Rice is an individual who may be served with process at 1100 NW South Outer Road, Blue Springs, Missouri 64015.

3.      Upon information and belief, Wheeler is an individual who may be served with process at 3309 West 127th Street, Leawood, Kansas 66209.

4.      Upon information and belief, Forgey is an individual who may be served with process at 910 Northwest Cedar Lane, Grain Valley, Missouri 64029.

5.      Upon information and belief, Blitt is an individual who may be served with process at 3522 West 89th Street, Leawood, Kansas 66206.

6.      Upon information and belief, Dreyer is an individual who may be served with process at 1232 West 61st Street, Kansas City, Missouri 64113.

7.      Upon information and belief, J. Fingersh is an individual who may be served with process at 4400 West 87th Place, Overland Park, Kansas 66207.

8.      Upon information and belief, P. Fingersh is an individual who may be served with process at 655 West 61st Terrace, Kansas City, Missouri 64113.

9.      Upon information and belief, Lieberman is an individual who may be served with process at 11504 Juniper Drive, Leawood, Kansas 66211.

10.     Upon information and belief, White is an individual who may be served with process at 1912 W 61st Terrace, Prairie Village, Kansas 66208.

11.     Upon information and belief, Asner is an individual who may be served with process at 11000 King Street, Overland Park, Kansas 66210.

12.     Upon information and belief, LaBoda is an individual who may be served with process at 9831 Apple Blossom Lane, Kansas City, Missouri 64152.

13.     The Court has subject matter jurisdiction over this action in that Plaintiffs and Defendants are citizens of different states and the amount in controversy in Hillcrest's Complaint exceeds $75,000, as authorized under 28 U.S.C. § 1332.

14.     The Court has personal jurisdiction over the Plaintiff's in that the actions and conduct that form the basis for Defendants' Counterclaim occurred in Missouri.

15.     Venue is proper in this Court because a substantial number of the parties reside in Missouri and all of the actions and conduct of Plaintiffs occurred in Missouri.

## BACKGROUND FACTS

16.     Hillcrest, through Rice and others, consistently sought banking business from Cordsen and his related entities for more than 15 years dating back to the 1990's.

*I.      Hillcrest's Initiation of Relationship.*

17.     During that time period, Hillcrest and Cordsen, through a sequence of conduct, established a common basis of understanding and a course of dealing and performance in the manner that they conducted their business and the affairs of Cordsen and his related entities.

18.     Cordsen has been a real estate developer in Eastern Jackson County, Missouri, for 51 years.

19.     Prior to working with Hillcrest, Cordsen had banking relationships with other financial institutions, but Hillcrest courted Cordsen and told him that it could handle all of his financing needs for his development projects.

20.     When Hillcrest first approached Cordsen to do business, Hillcrest, through Rice, prepared loan documents for Cordsen and his entities to execute.

21.     Cordsen extensively reviewed the documents and requested many changes because the "form" documents had several irrelevant and immaterial provisions, many items in the documents were inconsistent with, or inapplicable to, the transactions at issue, or were inconsistent with the parties' understandings.

22.     Hillcrest, through Rice, advised Cordsen that it understood that these were basic "form documents," but that Hillcrest was unwilling to customize the documents for each transaction because it could not vary from its forms.

23.     Hillcrest, through Rice, asked Cordsen to "trust" Hillcrest because these documents had been used in hundreds of other transactions with other builders and developers.

24.     Rice informed Cordsen that Hillcrest wanted to keep its documents "simple" because the parties, at the end of the day, would not be doing business with one another unless they "trusted" each other.

25.     Accordingly, Hillcrest refused to make any changes. By this time, Hillcrest had become the exclusive financing source for Cordsen and many of his entities.

26.     Additionally, the relationship with Hillcrest was so complete that Cordsen moved most of his liquid capital into accounts at Hillcrest.

27.     To complete Cordsen's projects that Hillcrest financed, there was a relationship of trust between Cordsen and Hillcrest relating to the nature of the financing for Cordsen's projects.

28.     Specifically, until the latter extensions and renewals of the loans at issue in the above-captioned action, Hillcrest provided 100% financing to Cordsen and his entities for the projects that Hillcrest financed. In fact, Hillcrest never required any

collateral or other security from Cordsen, other than the project itself, to secure repayment of the loans or guaranties on these projects.

29.    Moreover, Hillcrest always provided the Cordsen entities with an interest reserve on all of the projects that Hillcrest financed for Cordsen.  During their entire lending relationship, Hillcrest never required Cordsen to come out-of-pocket and pay any interest on a project loan, except in the last months of the relationship when for the first time Hillcrest demanded that Cordsen pay interest on his Personal Home (as defined below).

30.    Over the years, Rice and others at Hillcrest told Cordsen that he could rely on Hillcrest to conduct its business with the highest standards of honesty and fairness because the bank was working to build relationships with key important people in the development industry, including Cordsen.

31.    Rice stated to Cordsen that Hillcrest's Ethics Policy held the bank to high standards, including compliance with the spirit, as well as the letter, of the law.

32.    Rice, as Hillcrest's representative, openly told Cordsen that she believed that Hillcrest had a "fiduciary" relationship with Cordsen, as one of Hillcrest's key customers and this was part of the bank's Ethics Policy.

33.    In fact, Rice continued to confirm this special relationship with Cordsen from 2004 through 2009 when Hillcrest investigated, analyzed, and ultimately financed the project for Hidden Ridge (the "**Hidden Ridge Project**") and the project for Winterberry (the "**Winterberry Project**").

34.    Hillcrest openly advertised these fiduciary relationships and high standards of honesty and fairness as part of its strategy with its key customers.  Rice

stated to Cordsen that he was one of the customers that Hillcrest wanted to hold itself out to as a financial institution that held itself to the highest ethical standards in the banking industry.

35. During his entire relationship with Hillcrest, Cordsen's primary contact with Hillcrest was Rice. She developed a personal relationship with Cordsen and was intimately involved in Cordsen's business enterprises.

36. During the course of Cordsen's relationship with Hillcrest, Rice had hundreds of telephone conversations with Cordsen and personally met with him more than a hundred times to discuss and give advice to Cordsen on various personal and business financial matters.

37. Hillcrest repeatedly held itself out to Cordsen as his trusted financial resource. Hillcrest would use phrases with Cordsen such as "partner" and "trusted financial resource" to illustrate the relationship it forged with Cordsen as part of the bank's strategy to provide added value thereby distinguishing itself from its competitors.

38. Hillcrest, through Rice, promoted the bank to Cordsen as a partner, someone who could put deals together; the bank communicated to Cordsen that they had a special relationship with him as part of the bank's efforts to expand in the real estate development market.

39. Hillcrest, through Rice, told Cordsen that she wanted him to rely on Hillcrest for its advice and counsel, as a trusted financial resource, in finding a way to put deals together for Cordsen's projects.

40. Cordsen held Rice and Hillcrest in high regard and placed his trust in them. Cordsen relied heavily on Hillcrest and Rice as his partner and trusted financial

resource in both his personal and business financial affairs. And Hillcrest and Rice knew that Cordsen relied on them for this advice.

41.    Hillcrest also considered Cordsen to be an excellent and profitable customer with whom the bank wanted to continue and expand the relationship.

II.    *Hidden Ridge and Winterberry Projects*

42.    The Hidden Ridge Project involves 44 buildings, with each building consisting of four condominium units. At the beginning of Hillcrest's financing for the Hidden Ridge Project, Hidden Ridge would purchase the lot for a building, construct the building, and sell the condominium units.

43.    Hillcrest provided 100% financing for the Hidden Ridge Project.

44.    As Hidden Ridge bought lots, constructed the buildings, and sold the condominium units, it would pay down the Hidden Ridge loans and then reborrow funds to buy lots, build buildings, and sell additional units.

45.    This course of action continued for nearly six years, as evidenced by the numerous modifications to the original promissory notes for the Hidden Ridge Project.

46.    Prior to Hillcrest abruptly changing its course of conduct and dealings with Cordsen and his related entities, Hidden Ridge adopted a second marketing strategy for the Hidden Ridge Project involving the rental of unsold condominium units to customers and then selling the rented buildings to investors who desired the cash flow.

47.    At all times relevant to this lawsuit, and prior to Hillcrest calling the Hidden Ridge promissory notes due, the Hidden Ridge Project was generating sufficient cash flow to service all of Hidden Ridge's debt to Hillcrest.

48.     Hillcrest was brokering the Winterberry Project to Cordsen as part of a larger development involving two other key bank customers, Bruce Barnhart and Jim Thorpe.

49.     The loan on the Winterberry Project was for Winterberry to perform all of the internal development work on the Winterberry Project and then sell individual lots for construction of residential homes.

50.     Winterberry provided Hillcrest with detailed budgets for the Winterberry project; everything from cost of the land to construction of all infrastructure. As was the ordinary and customary course of action and practice between Hillcrest and Cordsen, Hillcrest provided a one-year promissory note for 100% of the financing for the Winterberry Project.

51.     Keeping with the ordinary and customary course of action and practice between Hillcrest and Cordsen by virtue of the special relationship between the parties, Hillcrest did not require any collateral or security, other than the projects themselves, to secure the obligations of Hidden Ridge or Winterberry at loan origination.

52.     The Hidden Ridge and Winterberry financing transactions, including 100% financing and no additional collateral or security, was in keeping with all prior financing relationships between Hillcrest and Cordsen based on Cordsen being a key customer and partner of Hillcrest and a person in whom Hillcrest wanted to expand and grow the relationship.

53.     Hillcrest, through Rice, informed Cordsen that the bank had a limited number of real estate developer customers who Hillcrest financed 100%.

54.     On both the Winterberry and Hidden Ridge Projects, Cordsen told

Hillcrest, through Rice, that he needed assurances from the bank that there would be

guaranteed financing for the entire project, that Hillcrest commit to each project through

completion, and that Cordsen would make no cash investment in the projects.

55.     Hillcrest's acknowledgement and acceptance of Cordsen's requests is

tellingly demonstrated in the Hidden Ridge Project where two of the original loans

matured in one year, but Hillcrest renewed and extended the loans for an additional five

years, in increments, as had been Hillcrest's ordinary custom and practice on past loans it

made to Cordsen's entities for other real estate development projects.

56.     Based on the special relationship between Hillcrest and Cordsen, he relied

on Hillcrest's representations that he was a key customer for the bank, that the bank was

a partner and trusted financial resource, and that the bank practiced the highest standards

of honesty and fairness when Hillcrest induced him to obtain the Winterberry loan on the

Winterberry Project with a one-year maturity.

57.     At the time that Hillcrest made the Winterberry loan, it knew that the

Winterberry Project, specifically construction of all infrastructure to begin selling lots,

would not be completed within the one-year term of the promissory note. That is because

Hillcrest knew that Winterberry could not even begin construction of the infrastructure on

the Winterberry Project until Barnhart and Thorpe, other Hillcrest key customers,

completed their agreements with Winterberry to bring roads and utilities to the

Winterberry Project.

58.     Hillcrest further knew that Winterberry would not purchase the

Winterberry property or obtain the Winterberry Project financing unless and until

Hillcrest financed the entire amount of the Barnhart and Thorpe project because the Winterberry Project was worthless and landlocked if Thorpe and Barnhart did not bring the roads and utilities from their project to the Winterberry Project.

59.     Hillcrest was intimately involved in the Barnhart and Thorpe project and the Winterberry Project in the follow respects:

a)     Hillcrest knew of the agreement between Barnhart and Thorpe and Winterberry for bringing roads and utilities to the Winterberry Project;

b)     Hillcrest knew that Winterberry could not begin full construction of the Winterberry infrastructure without the roads and utilities;

c)     Hillcrest knew that it was providing 100% of the financing for the Barnhart and Thorpe project and the Winterberry Project based on the budgets that were provided to Hillcrest;

d)     Hillcrest knew that Winterberry would not proceed with the purchase and financing for the Winterberry Project unless Hillcrest financed the entire amount of the Barnhart and Thorpe project because the Winterberry Project was worthless and landlocked if Thorpe and Barnhart did not bring the roads and utilities from their project to the Winterberry Project; and

e)     Hillcrest knew that at loan origination neither of the projects could be completed within the initial one-year term of the loans.

60.     Hillcrest assured Cordsen that it could finance 100% of the Winterberry Project and that it had plenty of capital so that Cordsen would not have to worry about running short of the funds necessary to complete the Winterberry Project.

61.     As part of the 100% financing commitment on each project that Cordsen financed with Hillcrest over 15 years, Hillcrest never told Cordsen that there was any minimum loan to value ratio that the projects had to maintain or any other factors that could affect complete financing and completion of a project, as evidenced by the nearly 18 renewals on one of the Hidden Ridge loans.

*III.    Rice and Hillcrest Promised Cordsen that They Were His Partner and Would Conduct Themselves to High Standards of Honesty and Fairness.*

62.    As set forth above, Hillcrest, through Rice, told Cordsen that he could rely on Hillcrest to conduct its business with the highest standards of honesty and fairness because the bank was trying to build relationships with key people in the real estate development industry. This included Hillcrest conducting its affairs in compliance with both the spirit and letter of the law.

63.    Hillcrest, through Rice, unabashedly told Cordsen that Hillcrest believed it had a fiduciary relationship with Cordsen as one of the bank's key customers and as part of the bank's Ethics Policy.

64.    In fact, Hillcrest continued to affirm this special relationship with Cordsen from 2004 through 2009.

65.    Upon information and belief, openly advertising these fiduciary relationships and high standards of honesty and fairness was part of Hillcrest's strategy with its key customers.

66.    Cordsen believed that when Hillcrest and Rice made promises to Cordsen that the bank would meet these high standards for honesty and fairness in all of its dealings with Cordsen.

67.    Cordsen further believed that: 1) Hillcrest would be faithful in its relationship with Cordsen; 2) Cordsen could depend on Hillcrest's truthfulness, trustworthiness, and loyalty; 3) Hillcrest would be devoted and faithful in protecting the interests of Cordsen and his entities; and 4) Hillcrest would not lie and be disloyal to Cordsen or his business interests.

68.     After gaining Cordsen's trust through 100% financing on several projects with no out-of-pocket interest expense, Hillcrest made numerous representations to Cordsen about the Hidden Ridge Project and the Winterberry Project:

a)      Hillcrest would finance both projects as long as it took to build out the Hidden Ridge Project and to develop all infrastructure and sell all of the lots in the Winterberry Project;

b)      Hillcrest would provide funding for all costs, including, without limitation, interest, infrastructure costs, etc. on the Winterberry Project;

c)      Hillcrest would maintain its commitment to fund the Hidden Ridge Project to completion;

d)      Hillcrest would maintain its commitment to fund the Winterberry Project to the maximum amount of the original promissory note;

e)      Hillcrest would not change its custom and practice with Cordsen by demanding additional collateral from Cordsen and when reminded of this representation, Hillcrest represented that it only needed the additional collateral for two months to satisfy examiners because of a golf course development that went south in Arizona;

f)      Hillcrest represented that it would release the requested additional collateral after two months;

g)      Hillcrest represented that even though the development market had slowed, it was prepared to fully finance both the Barnhart and Thorpe project and the Winterberry Project because it had plenty of capital and the fact that Cordsen had informed the bank that he would not do the Winterberry Project if the bank did not fulfill its original lending commitment; and

h)      Hillcrest ran its business with the highest standards for honesty and fairness and that it believed it was a partner with Cordsen on the successful completion of his projects.

69.     Almost on a daily basis, Hillcrest, through Rice, openly promoted its honesty and ease with which Cordsen could deal with the bank, including, without limitation, that Hillcrest would never make any false or misleading statements to Cordsen or his entities.

70.     Throughout all of his dealings with Hillcrest, there is no doubt that Hillcrest, through Rice, pushed a "no cash investment" structure on all Cordsen projects that Hillcrest financed, including, without limitation, the Hidden Ridge Project and the Winterberry Project.

71.     There were no regulatory pressures on Hillcrest from 2004 through 2007 when the Hidden Ridge and Winterberry deals were put together and financed, and, therefore, Hillcrest never said anything to Cordsen that if the regulatory environment changes, we will want to get out of our commitments to you.

72.     The fact that Hillcrest perceived it had plenty of capital was an advantage that Rice used with Cordsen and other key customers.

IV.     *Hillcrest's Change in Its Ordinary and Customary Practices with Key Customers*

73.     In 2009, Hillcrest, through Rice, citing problems with a golf course development in Arizona, asked Cordsen and other key customers to pledge additional collateral as security for their loans with Hillcrest even though Hillcrest induced Cordsen to take out the loans for Winterberry and Hidden Ridge without any additional collateral. Hillcrest informed Cordsen and other key customers that the pledge of the collateral was short term, approximately two months, and necessary to satisfy bank examiners because of the golf course development debacles.

74.     Hillcrest, through Rice, further represented that the additional collateral was not necessary for the existing Hidden Ridge and Winterberry loans, other than to satisfy the bank examiners on the entire real estate development portfolio, which included the golf course development debacle.

75. Having been induced to obtain the financing on the Winterberry Project and Hidden Ridge Project without any additional collateral being pledged, Cordsen, in reliance on these representations, and Hillcrest's prior representations of a fiduciary relationship and to conduct its business with the highest standards of honesty and fairness, pledged two homes, one at the Lake of the Ozarks for the Hidden Ridge Project and the other his personal residence for the Winterberry Project (collectively, the **"Additional Collateral"**), as additional collateral for the Winterberry and Hidden Ridge loans.

76. When Cordsen communicated his unwillingness to pledge the Additional Collateral, even on a short term basis, Rice told him that "Jack, the bank doesn't want your house." Rice further represented to Cordsen the problems that Hillcrest was having with the Arizona golf course development and asked Cordsen to "help us out."

77. Cordsen repeatedly asked for the release of the Additional Collateral after the two months expired, but Hillcrest, through Rice, informed him that the Bank was still working through the golf course development debacle.

78. Additionally during this time period, Hillcrest reneged on its promise that it was prepared to fully finance both the Barnhart and Thorpe project and the Winterberry Project. Although its prior course of dealing and conduct with Cordsen and his entities was to renew and extend promissory notes for the same principal amount so that Hillcrest could deliver on its promise of no cost, 100% financing to Cordsen, and Hillcrest's representations that it would fund the full amount of the original Winterberry loan to induce Cordsen to finance the Winterberry project, Hillcrest capped the Barnhart and Thorpe promissory note and the Winterberry promissory note at their then principal

balance and denied both sets of developers the opportunity to complete their respective developments.

79.     Further, Hillcrest, in direct contravention of its inducement to Cordsen to finance the entire amount of original loans for the Barnhart and Thorpe loans and the Winterberry loan, demanded that Winterberry make a principal pay down on the Winterberry loan to obtain a renewal of that loan.

80.     This requirement for a principal pay down was outside of Hillcrest's prior course of dealing and conduct with Cordsen and his entities.

81.     Hillcrest further violated its prior course of dealing and conduct with Cordsen, and its prior representations of a fiduciary relationship and to conduct its business with the highest standards of honesty and fairness, by refusing to advance further funds on the Hidden Ridge Project even though the Hillcrest loan committee had approved additional financing to complete the remaining construction on the Hidden Ridge Project.

82.     Further, Hillcrest, in direct contravention of its inducement to Cordsen to finance the entire amount of the Hidden Ridge Project, demanded that Hidden Ridge make a principal pay down on the Hidden Ridge loan to obtain a renewal of that loan.

V.     *Sale of Cordsen's Lake of the Ozarks Home.*

83.     In April 2010, Cordsen sold his Lake of the Ozarks home (the "**Lake Home**"). It appraised at over $2.5 million, but he had to accept a $1.6 million contract so that he could make the payments that Hillcrest suddenly insisted on despite their prior inducement to Cordsen to provide no cost, 100% financing on the Hidden Ridge Project and the Winterberry Project.

84.     Cordsen, pursuant to Hillcrest's prior representations and inducements to pledge the Additional Collateral for two months, asked Hillcrest to release the deed of trust on the Lake Home so that he could use the proceeds to finish the Winterberry Project. Cordsen needed to finish the infrastructure development in the Winterberry project so that he could sell the lots to repay Hillcrest the monies he owed on the Winterberry promissory note.

85.     Hillcrest represented to Cordsen that it agreed with his application of the sale proceeds from the Lake Home.

86.     Despite their prior representations concerning the Additional Collateral, and Hillcrest's representations and inducements that it had a fiduciary relationship with Cordsen and his entities and to conduct its business with the highest standards of honesty and fairness, took all of the proceeds from the sale of the Lake Home, and applied the funds in a manner different than their representations and inducement to Cordsen. This left Cordsen completely exposed to Hillcrest on the Winterberry loan.

87.     Additionally, and without Cordsen's consent, Hillcrest paid off the first mortgage on Cordsen's personal residence (the "**Personal Home**") and raised the amount of the lien from approximately $310,000 to $589,000 even thought the bank represented and induced Cordsen to pledge the Personal Home with the promise of release in two months and to keep the lien amount at $310,000.

88.     Hillcrest took all of these actions after promising Cordsen that it had a fiduciary relationship with Cordsen and his entities and it would conduct its business with the highest standards of honesty and fairness.

## VI. *Hillcrest Defrauded Cordsen, Hidden Ridge, and Winterberry*

89.     Notwithstanding its representations and inducements, Hillcrest demanded that Cordsen sign deeds of trust covering Additional Collateral.

90.     These actions directly contravened Hillcrest's assertions and representations that it had a fiduciary relationship with Cordsen and his entities and it would conduct its business with the highest standards of honesty and fairness.

91.     Hillcrest ignored its promise to Cordsen on the application of the sale proceeds from the Lake Home and applied the proceeds in its own sole and absolute discretion notwithstanding its agreement with Cordsen.

92.     Hillcrest further ignored its promise to Cordsen on the amount of the lien on the Personal Home by changing the deed of trust to the terms and conditions that Hillcrest wanted, without Cordsen's consent or approval.

93.     Hillcrest took all of these actions in direct contravention of its fiduciary relationship with Cordsen and his entities and it would conduct its business with the highest standards of honesty and fairness.

94.     In fact, when Hillcrest made its decision to aggressively reduce its exposure to real estate development loans, it initiated foreclosure proceedings against the Personal Home even though Hillcrest induced Cordsen to pledge the Personal Home with the promise of releasing the deed of trust after two months.

95.     Because of Hillcrest's questionable lending practices with real estate development loans, it was taken over by the FDIC and sold to another company.

*VII. Course of Dealing and Course of Performance*

96.    During the period of 1996 through 2010, Cordsen and his entities and Hillcrest created a "course of dealing." During this same time period, and on projects like Oaks Ridge Meadows condominiums, Oak Ridge Meadows residential homes, the Hidden Ridge Project, and the Winterberry Project, Cordsen and his entities and Hillcrest further established a course of performance.

97.    During this period, the course of performance permitted Cordsen and his entities to draw funds from existing credit facilities up to the total amount of the original financing amount, based on no cost, 100% financing. Hillcrest routinely funded the projects in this fashion. Yet in 2009 and 2010, Hillcrest unilaterally breached the agreements of the parities and advised that they would no longer fund the Hidden Ridge Project and the Winterberry Project.

*VIII. Hillcrest Promised Winterberry that It Would Completely Finance the Barnhart and Thorpe Project and the Winterberry Project.*

98.    In 2007, Hillcrest meet with Cordsen, Mr. Thorpe, and Mr. Barnhart to discuss their two projects. During that meeting, Cordsen informed Hillcrest that Winterberry would not purchase the Winterberry Project or obtain the Winterberry loan if Hillcrest did not commit to full funding of all amounts necessary to complete both projects. Cordsen needed these assurances from Hillcrest because the Winterberry Project was landlocked without the roads and utilities from the Barnhart and Thorpe project. Moreover, Cordsen knew that he could never pay back the Winterberry loan if he did not finish the infrastructure development in the Winterberry Project because he would not be able to sell any lots.

99.     Hillcrest approved the loans to Winterberry for the Winterberry Project and to Barnhart and Thorpe for their project. The principal amount of the loans was the exact amount of money needed to complete the projects pursuant to the budgets that both sets of developers provided to Hillcrest.

100.    Despite these assurances and promises, Hillcrest subsequently reduced the principal balance of both loans to the amount that had been drawn to date on the projects essentially killing both projects.

101.    Moreover, Hillcrest killed the Hidden Ridge Project by failing to deliver promised financing for construction of the remaining buildings on the project, even thought Hillcrest's loan committee had approved the financing for at least one of the buildings.

102.    Killing the Hidden Ridge Project took Cordsen and Hidden Ridge by complete and utter surprise in that the Hidden Ridge Project was cash flowing sufficient monies to service the debt to Hillcrest.

103.    Subsequent to Hillcrest killing the Hidden Ridge Project, the Winterberry Project, and the Barnhart and Thorpe project, Cordsen learned that Hillcrest was taking this same kill strategy with other key customers in Eastern Jackson County, Missouri.

104.    Hillcrest's kill strategy involved obtaining additional collateral from key borrowers or guarantors when Hillcrest had never requested this type of security in 15 plus years of dealings with these key customers and demanding high dollar principal pay downs on the loans, which the bank had never required from these key customers.

105.    When Cordsen pressed Hillcrest as to why it was killing his projects, Rice stated that Hillcrest believed it was insecure on the projects. Cordsen pushed Hillcrest

for more detail on this alleged insecurity, but Rice was not forthcoming, except to admit that Hillcrest had not updated any appraisals on the projects.

106.     Additionally, the Additional Collateral that Hillcrest requested was procured by fraud, including, without limitation, the following:

a)  Hillcrest approach Cordsen and other key customers to pledge additional collateral on their projects for a two month period to help the bank with its examiners because of a problem with a golf course development in Arizona;

b)  Cordsen questions Rice about why he needed to pledge the Additional Collateral, and Rice told him that it had nothing to do with the Winterberry Project or the Hidden Ridge Project;

c)  Rice told Cordsen that Hillcrest needed additional collateral from many of its key customers so that overall the golf course development debacle would not look so bad to the bank examiners;

d)  Cordsen informed Rice that he did not want to pledge the Additional Collateral because it constituted his retirement, but Rice responded by telling Cordsen that "Jack, the bank doesn't want your house" and that "he needed to help us out";

e)  Rice further stated that if Cordsen helped the bank out with this problem, Hillcrest would help him even more in the future;

f)  Rice told Cordsen that the Additional Collateral would be released within 60 days, which was the time period she stated was necessary to clean up the golf course development debacle;

g)  Rice further informed Cordsen that the Additional Collateral was only being used for the purpose set forth above because Hillcrest had not updated any appraisals on the Winterberry Project or the Hidden Ridge Project to know whether the bank was insecure on either project;

h)  Cordsen visited Hillcrest on numerous occasions after pledging the Additional Collateral to ask Rice where he stood with the bank releasing the collateral. On each occasion, Rice informed Cordsen that the release would occur shortly because Hillcrest was almost finished with the golf course development debacle;

i)  All statements of past good will and mutually beneficial experiences appeared to create an environment of good feeling with Cordsen, and Rice never let on to Cordsen or once said that

the bank would not release the Additional Collateral upon solving its problems with the golf course development;

j) Hillcrest never advised Cordsen of the bank's kill strategy outlined above; and

k) Hillcrest never advised Cordsen or his entities that after obtaining the Additional Collateral, the bank was going to effectively kill the above-stated projects by also demanding huge principal pay downs on the loans.

107. Hillcrest's fraudulent and reckless conduct is chilling when you consider that its plan to kill Cordsen's loans occurred at the same time as Hillcrest requested the Additional Collateral without obtaining any updated appraisals on the Winterberry Project, the Hidden Ridge Project, or the other projects that the bank killed with this strategy.

108. What Cordsen discovered was that as a result of regulatory pressure, which Hillcrest did not disclose to Cordsen, Hillcrest approached Cordsen and other key customers and requested that they assist Hillcrest by giving the bank additional collateral that could be used to collateralize the loans and developments as a source of liquidity and relieve potential criticism for the high "loan to value" transactions that Hillcrest had enticed Cordsen and other to participate in.

109. Hillcrest knew of these regulatory pressures even when Rice and other represented to Cordsen, Mr. Barnhart, and Mr. Thorpe that Hillcrest would completely fund the Winterberry Project and the project of Mr. Barnhart and Mr. Thorpe at loan origination.

110. What Hillcrest failed to tell Cordsen was that the bank had a secret plan that once it obtained the excess Additional Collateral from Cordsen that Hillcrest was

going to immediately come back and start demanding huge principal pay downs on his loans in exchange for short term loan renewals.

111.    As part of this secret scheme, Hillcrest went to very short three-month renewal periods on Cordsen's loans with Hillcrest so that Hillcrest could continually demand more and more principal pay downs at a time when Hillcrest had killed the Winterberry Project by not advancing all of the monies the bank promised to provide.

112.    Once Hillcrest had the signed documents for the Additional Collateral, it engaged in a systematic and calculated scheme to kill the Hidden Ridge Project, the Winterberry Project, and the Barnhart and Thorpe project, even though the bank had induced Cordsen to obtain the Winterberry loan by promising that it would fund completely the Barnhart and Thorpe project.

113.    Had the Bank dealt with the high standards of honesty and fairness that it proclaimed to obtain Cordsen's business, Cordsen would have never signed the Winterberry loan documents or modifications to the Hidden Ridge loans.

114.    Additionally, had Hillcrest told Cordsen in 2007 what it intended to do with the Winterberry Project and the Hidden Ridge Project, Cordsen would have never borrowed the funds for the Winterberry Project and given his personal guaranty and would have obtained replacement financing from another financial institution on the Hidden Ridge Project.

115.    Hillcrest never revealed its true intentions to Cordsen, and it made these secret decisions even though Cordsen was attempting to assist Hillcrest in providing the Additional Collateral so that the bank could satisfy the examiners on the Arizona golf course development debacle.

116.    Hillcrest intentionally deceived Cordsen into signing documents.

117.    Hillcrest further failed to properly advise Cordsen of the important
information that the bank had superior knowledge:  that regulators were extremely
concerned about Hillcrest's capital reserves and its exposure on real estate development
loans.

IX.    *As Part of Hillcrest's Kill Strategy It Failed to Properly Apply the Sale
       Proceeds from the Lake Home.*

118.    When it became apparent that Hillcrest was invoking its kill strategy
against Cordsen, he was forced to sell the Lake Home for more than a $1 million less
than its appraised value so that he could meet Hillcrest's financial demands on projects
that the bank had agreed to fully finance.

119.    Cordsen approached Hillcrest about releasing the lien on the Lake Home
pursuant to the parties' agreement when Hillcrest induced Cordsen to pledge the
Additional Collateral, but the bank refused.

120.    Additionally, Cordsen sat down with Rice and Hillcrest to work through
the distribution of the sale proceeds.  Cordsen communicated to Rice and Hillcrest that
his intent was to funnel most of the sale proceeds to the Winterberry Project in an effort
to keep that loan alive so that he could finish the development and sell the lots to repay
the Winterberry loan.  Hillcrest and Cordsen agreed on an application of the sale
proceeds from the Lake Home.

121.    In contravention of that agreement, and in furtherance of its kill strategy,
Hillcrest applied the sale proceeds in a different manner, including, without limitation,
paying off the first lien on the Personal Home and then increasing the maximum lien
amount under the deed of trust, which Cordsen never agreed to do, and paying off or

down Hidden Ridge loans so that very little, if any, of the sale proceeds went to the Winterberry Project.

122. The fact is that Hillcrest was on a course to try and seize all of the Additional Collateral from Cordsen. Specifically, Hillcrest has set a foreclosure sale date of December 10, 2010 on the Personal Home even though there is no default under the deed of trust.

123. When Cordsen questioned Hillcrest and Rice about the application of funds from the sale of the Lake Home, Rice told Cordsen that the bank could do whatever it wanted with the money.

124. Moreover, Hillcrest has initiated a foreclosure of the Winterberry property even though no default exists under the deed of trust and without conducting any investigation into the complaints of its key customer, Cordsen, concerning Hillcrest's failure to comply with the agreements it has with Cordsen.

X. *Hillcrest's Reckless Indifference in Breaching Its Agreement on the Winterberry Project.*

125. Hillcrest induced Cordsen to enter into the Winterberry loan with the assurances and promises that the bank would fully fund the Winterberry Project based on the budget that became the principal amount of the Winterberry loan and that the bank would fully fund the Barnhart and Thorpe project so that the Winterberry Project would not be landlocked without roads and utilities.

126. Midstream, and in furtherance of its kill strategy, Hillcrest reduced and capped the principal amount of the Winterberry loan at the amount that had been drawn from the construction loan to that date even though the Winterberry Project was not

complete and could not be completed without the full amount of the original Winterberry loan.

127.    Additionally, and in contravention of its inducement to Cordsen, Hillcrest further capped the Barnhart and Thorpe loan at the amount that had been drawn from the construction loan to that date even though their project was not complete, the roads and utilities had not been delivered to the Winterberry Project as agreed, and their project could not be completed without the full amount of the original project loan.

128.    Hillcrest engaged in these activities knowing that Cordsen, Barnhart, and Thorpe neither had the available funds, nor the ability to obtain replacement financing, to complete their projects. This completed Hillcrest's strategy to kill both projects and foreclose on the Winterberry Project even though it was Hillcrest that caused the default.

XI.    *Hillcrest Breached Its Agreements with Cordsen First.*

129.    In order for Hillcrest to prevail on its claim that Cordsen, Winterberry, and Hidden Ridge defaulted, Hillcrest must itself substantially comply with the terms of, and not materially breach the terms of the agreements. That breach is "material" if it operates to prevent the duty of the other party to perform from becoming due.

130.    Hillcrest induced Cordsen to obtain the Winterberry loan and pledge the Additional Collateral. As part of its inducement, Hillcrest promised Cordsen that it would fully fund the initial loans on the Winterberry Project and the Barnhart and Thorpe project so that both projects could be completed and lots sold to repay the loans.

131.    Hillcrest further induced Cordsen to pledge the Additional Collateral under the guise of helping the bank survive regulatory scrutiny over the alleged Arizona golf course development debacle.

132.     Hillcrest's actions in failing to fully fund the initial loans on the Winterberry Project and the Barnhart and Thorpe project and to release the Additional Collateral, as promised, materially impacted Cordsen's ability to perform under Winterberry's and Hidden Ridge's agreements with Hillcrest.

133.     Hillcrest cannot breach the agreements with Cordsen and his entities and interfere with his performance, and then declare a default so as to enable Hillcrest to sell the Winterberry and Hidden Ridge properties through a foreclosure. Hillcrest's prior material breach excused Cordsen, Winterberry, and Hidden Ridge of their performance under the agreements.

134.     Moreover, as the first party in material breach of the agreements, Hillcrest also lost its right to enforce any of the provisions of the agreements. Therefore, Hillcrest cannot assert or rely upon any alleged breaches that Cordsen or his entities committed after Hillcrest's breach of the agreements.

135.     Based on the first to breach rule, no event of default existed under the agreements by Cordsen or his entities. Therefore, taking all of the proceeds from the sale of the Lake Home, foreclosing on the Personal Home, and foreclosing on the Winterberry property have caused, or are causing significant damage to Cordsen, Winterberry, and Hidden Ridge.

*XII.     Hillcrest's Scheme to Defraud Cordsen, Winterberry, and Hidden Ridge.*

136.     Hillcrest engaged in a scheme to defraud Cordsen with all of the activities, representations, and actions set forth above. For example, Hillcrest knew, or should have known, that it was not going to release the Additional Collateral after two months and that it was not going to fully fund the original loan commitment amount on the Winterberry Project or continue its commitments on the Hidden Ridge Project.

137. Yet Hillcrest did not disclose this information to Cordsen or his entities even though it knew that Cordsen would not pledge the Additional Collateral or borrow the money on the Winterberry Project but for Hillcrest's representations, activities, and actions.

138. Additionally, even though the Hillcrest loan committee approved funding to construct additional buildings on the Hidden Ridge Project, Hillcrest withheld the funding even though this project was cash flowing sufficient amounts to repay Hillcrest. Hillcrest actions not only meant it was the first to default under the agreements with Hidden Ridge, but created a situation that forced Hidden Ridge to lose a valuable asset.

XIII. *Winterberry had Plenty of Funds Available for the Winterberry Project.*

139. The loan documents on the original Winterberry loan amply demonstrate that sufficient funds remained to be drawn so that Winterberry could finish the Winterberry Project.

140. Upon information and belief, the loan documents on the original loan to Barnhart and Thorpe demonstrate that sufficient funds remained to be drawn so that they could finish their project and deliver the promised roads and utilities to the Winterberry Project.

141. Hillcrest unilaterally, and in breach of its loan commitment to both projects, impermissibly lowered the amounts available to both projects such that neither project could be finished. These actions killed both projects.

XIV. *Hillcrest's Lack of Good Faith.*

142. Hillcrest breached its duty of good faith in several respects throughout the above-referenced transactions, including, without limitation, not releasing the Additional

Collateral, not applying the proceeds from the sale of the Lake Home in accordance with the parties' agreement, failing to fully fund the Winterberry Project, and withholding approved funding for the Hidden Ridge Project.

143.    Hillcrest did not exhibit honesty in fact in its relationship with Cordsen and his entities, did not observe reasonable commercial standards, and did not act consistently with the justified expectations of the other party.

144.    Hillcrest's actions specifically involved bad faith, and included fraudulent misstatements by Rice and others. Hillcrest's actions violated community standards of decency, fairness, and reasonableness.

XV.    *Hillcrest's Fiduciary Duties.*

145.    Hillcrest, through Rice and others, dealt directly with Cordsen and his entities over a 15 year period, including the matters involved in this litigation, and Hillcrest had knowledge of the reliance and confidence of the customer and stood to profit from non-disclosure to its key customer.

146.    In this case, Hillcrest even stands to profit from the non-disclosures to Cordsen and his entities.

147.    Hillcrest also failed to disburse funds from a transaction in accordance with the terms of the parties' original written agreements.

148.    Hillcrest further failed to fund construction and development loans according to oral representations made to Cordsen and his entities, a third party, which has an interest in the transactions.

149.    Hillcrest exerted control over certain aspects of Cordsen's business enterprise and recommended a course of action that resulted in Hillcrest's own benefit. In this instance, Hillcrest became a fiduciary for Cordsen and his entities.

150.    Moreover, Hillcrest enticed Cordsen, through Winterberry, to invest in that project as part of the bank's growth strategy for its real estate development loan department. Hillcrest continued its ordinary custom and practice of 100% financing on the Hidden Ridge Project and the Winterberry Project, without any out-of-pocket expense, when it knew, or should have know, that it was not going to continue this type of financing.

151.    Hillcrest had superior knowledge of these financial products, the regulatory scheme it was under, its own capital structure, and the total amount of these types of loans that Hillcrest could maintain on its balance sheet. Hillcrest never disclosed any of this information to Cordsen or his entities, but enticed them into these relationships because Hillcrest was a self-proclaimed expert on how to structure these deals.

152.    If Hillcrest had plans to abort the projects and divorce itself from Cordsen at some future date if times got difficult, the bank owed Cordsen and his entities a fiduciary duty to disclose information about Hillcrest and its motives among other things.

XVI.    *Hillcrest's Actions to Kill the Winterberry Project and the Hidden Ridge Project Were In Response to the Bank's Own Bad Decisions on Other Loans.*

153.    After making the Winterberry loan, Hillcrest informed Cordsen on numerous occasions that it had to cut back on its real estate development lending due to the Arizona golf course development debacle.

154.     Upon information and belief, Hillcrest was having regulatory issues with its capital structure related to loans that had nothing to do with the Winterberry or Hidden Ridge loans.

155.     Because of the Hillcrest's own actions in other lending, it changed its course of conduct and practice with Cordsen and his entities by killing the Hidden Ridge Project and the Winterberry Project.

156.     Hillcrest's actions in obtaining the Additional Collateral and then sinking the Hidden Ridge Project and the Winterberry Project, notwithstanding its commitment to Cordsen and Winterberry that the bank would fully fund the Winterberry Project, demonstrate that Hillcrest acted in a concerted effort after it obtained the Additional Collateral from Cordsen to orchestrate a series of actions against the Winterberry Project and the Hidden Ridge Project by, including, without limitation, failing to fully fund the Winterberry Project, failing to fully fund the Barnhart and Thorpe project, failing to advanced approved funds for the construction of additional buildings at the Hidden Ridge Project, and failing to apply the proceeds from the sale of the Lake Home in the manner that the parties' agreed.

XVII.   Hillcrest Fraudulently Induced Cordsen to Sign Documents.

157.     As set forth above, Hillcrest made numerous fraudulent and negligent representations prior to Cordsen signing the documents for the Additional Collateral and the Winterberry loan. These examples are not intended to be exhaustive, only illustrative.

158.     But for these representations, Cordsen would not have signed any documents relating to the Winterberry Project, the Hidden Ridge Project, or the Additional Collateral from and after the date of the representations.

*XVIII. Hillcrest's Other Tortious Acts.*

159.    As set forth in the above facts, Hillcrest engaged in numerous,
independently tortious and wrongful acts to accomplish its purpose. The declaration of
default was both intentional and improperly motivated. Among other wrongful acts,
Hillcrest exercised the Assignment of Rents under its deeds of trust on the Hidden Ridge
Project when Cordsen and Hidden Ridge stood ready, willing, and able to perform under
the original course of conduct and practice between the parties, as evidenced by the
agreements, including, without limitation, the bank advancing the funds for construction
of additional buildings, as approved by the bank's loan committee.

160.    Hillcrest also engaged in numerous representations and misstatements to
Cordsen and his entities, including, without limitation, fraudulent statements about fully
funding the Winterberry Project in accordance with the original loan documents, fully
funding the Barnhart and Thorpe project so that Winterberry would have roads and
utilities for the Winterberry Project, and only needing the Additional Collateral for two
months to support Hillcrest with the regulators on the Arizona golf course debacle.

161.    Hillcrest's failure to deal fairly and in good faith with Cordsen and his
entities was driven solely by Hillcrest's desire to rid itself of Cordsen's loans and to
convert the properties to cash.

162.    Hillcrest not only intentionally interfered with the business expectancy of
Cordsen and his entities, but did so for a wrongful and improper motive, and utilized
independently wrongful and fraudulent means.

163.    These actions only exemplify Hillcrest's execution of its kill strategy put
in place after it grabbed the Additional Collateral.

## COUNT I – BREACH OF CONTRACT (Winterberry)
### (Against Hillcrest, Rice and LaBoda)

164.    Defendants incorporate paragraphs 1 through 163 above.

165.    Winterberry and Hillcrest entered into agreements wherein Hillcrest agreed to fully fund expenses for development of the Winterberry Project.

166.    In fact, the original loan amount for the Winterberry loan incorporated all expenses necessary to complete the Winterberry Project.

167.    Hillcrest and Winterberry agreed that Winterberry would not purchase the property or obtain the loan unless Hillcrest committed to fund not only all expenses for the Winterberry Project, but also all expenses for the Barnhart and Thorpe project so that the Winterberry Project would have roads and utilities brought to its borders. Without the roads, the Winterberry property is landlocked, which Hillcrest knew.

168.    Winterberry performed and is prepared to perform under the terms of the agreements.

169.    LaBoda is the successor trustee under the deed of trust on the Winterberry property.

170.    Hillcrest and LaBoda have failed to perform under the terms of the agreements by, among other things, having refused to advance funds necessary to continue the Winterberry Project, having refused to fully fund the Barnhart and Thorpe project so that the Winterberry project has ingress and egress, and breaching the deed of trust by conducting a trustee's sale.

171.    Winterberry has been damaged by Hillcrest's and LaBoda's breach of the agreements.

WHEREFORE, defendant Winterberry Development, LLC respectfully requests that the Court enter Judgment on Count I of the Counterclaim in favor of Winterberry, and against Hillcrest Bank and Adam LaBoda, in an amount in excess of $100,000, the exact amount to be proven at trial; for prejudgment and post-judgment interest as provided by law; for Winterberry's costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

### COUNT II – BREACH OF CONTRACT (Cordsen and the Trust)
**(Against Hillcrest and LaBoda)**

172.    Defendants incorporate paragraphs 1 through 171 above.

173.    Cordsen and Hillcrest entered into agreements wherein Cordsen and the Trust agreed to provide the Additional Collateral in exchange for that collateral being released in two months after Hillcrest satisfied its regulators concerning the Arizona golf course development and for the application of the proceeds from the sale of the Lake Home.

174.    Cordsen and Cordsen further entered into agreements on the Hidden Ridge Project for full funding of that project.

175.    Cordsen performed under the terms of the agreements.

176.    Hillcrest forced the sale of the Lake Home and the Personal Home due to its change of the ordinary course of action and practice between the bank and Cordsen.

177.    Cordsen was forced to sell the property at nearly a $1 million loss because of Hillcrest's breach of its agreements with Cordsen.

178.    Hillcrest further breached its agreements with Cordsen and the Trust on the application of the proceeds from the sale of the Lake Home.

179. Hillcrest further breached its agreements with Hidden Ridge by failing to fully fund the Hidden Ridge Project, which led to the conducting of a foreclosure sale on the Personal Home.

180. LaBoda is the successor trustee under the deed of trust on the Personal Home.

181. Hillcrest and LaBoda have failed to perform under the terms of the agreements by, among other things, not releasing the Additional Collateral, forcing the sale of the Lake Home, not applying the proceeds from the sale of the Lake Home in the manner and method that the parties agreed, not fully funding the Hidden Ridge Project, and breaching the terms of the Personal Home deed of trust by conducting a trustee's sale.

182. Cordsen and the Trust have been damaged by Hillcrest's and LaBoda's breach of the agreements.

WHEREFORE, defendant Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully requests that the Court enter Judgment on Count II of the Counterclaim in favor of Cordsen and the Trust, and against Hillcrest Bank and Adam LaBoda, in an amount in excess of $1,000,000, the exact amount to be proven at trial; for prejudgment and post-judgment interest as provided by law; for Cordsen's and the Trust's costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT III – BREACH OF CONTRACT (Hidden Ridge)
### (Against Hillcrest)

183. Defendants incorporate paragraphs 1 through 182 above.

184.   Cordsen and Hillcrest entered into agreements wherein Hillcrest agreed to continue its ordinary and customary conduct and practices on the Hidden Ridge Project.

185.   Cordsen performed under the terms of the agreements.

186.   Hillcrest failed to perform under the terms of the agreements even though its loan committee approved funding for construction of additional buildings at the Hidden Ridge Project.

187.   Hillcrest has failed to perform under the terms of the agreements by, among other things, not funding the construction of the additional buildings in the Hidden Ridge project, and breaching the terms of the Hidden Ridge deeds of trust by exercising the Assignment of Rents.

188.   Hidden Ridge has been damaged by Hillcrest's breach of the agreements.

WHEREFORE, defendant Hidden Ridge Development Company respectfully request that the Court enter Judgment on Count III of the Counterclaim in favor of Cordsen and the Trust, and against Hillcrest Bank, in an amount in excess of $100,000, the exact amount to be proven at trial; for prejudgment and post-judgment interest as provided by law; for Hidden Ridge's costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

### COUNT IV – PROMISSORY ESTOPPEL (Winterberry)
### (Against Hillcrest and LaBoda)

189.   Defendants incorporate paragraphs 1 through 188 above.

190.   As set out in paragraphs 1 through 163, Hillcrest and Winterberry reached agreements that had clear and definitive terms to, among other things, fund all expenditures for the Winterberry Project, fund all expenditures for the Barnhart and

Thorpe project so that the Winterberry Project would have access to roads and utilities, and to hold the Winterberry property in trust under the deed of trust.

191.    Winterberry reasonably relied upon the representations of Hillcrest and LaBoda that the agreements were reached, that Hillcrest would advance all of the funds promised on both project, and that Hillcrest and LaBoda would not breach the agreements by declaring a default and attempting to seize Winterberry's property.

192.    The equities support the enforcement of the agreements in that among, other things, there are amounts left under the original loan commitments to finish both projects, and there is no basis to proceed with a fraudulent scheme to conduct a trustee's sale.

193.    Winterberry will suffer damages, and an injustice will result, if the representations of Hillcrest and LaBoda are not enforced and Hillcrest and LaBoda are allowed to repudiate its representations and promises to Winterberry.

194.    Winterberry has been damaged by Hillcrest's breach of the agreements.

WHEREFORE, defendant Winterberry Development, LLC respectfully requests that the Court enter Judgment on Count IV of the Counterclaim in favor of Winterberry, and against Hillcrest Bank and Adam LaBoda, in an amount in excess of $100,000, the exact amount to be proven at trial; for prejudgment and post-judgment interest as provided by law; for Winterberry's costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

### COUNT V – PROMISSORY ESTOPPEL (Hidden Ridge)
### (Against Hillcrest)

195.    Defendants incorporate paragraphs 1 through 194 above.

196.     As set out in paragraphs 1 through 163, Hillcrest and Hidden Ridge reached agreements that had clear and definitive terms to, among other things, continue the course of dealing, conduct, and practice that the parties had for over 15 years, fund additional buildings at the Hidden Ridge Project, as approved by the Hillcrest loan committee, and to hold the Hidden Ridge property in trust under the deeds of trust.

197.     Hidden Ridge reasonably relied upon the representations of Hillcrest that the agreements were reached, that Hillcrest would advance the funds promised on Hidden Ridge Project, and that Hillcrest would not breach the agreements by declaring a default and attempting to seize Hidden Ridge's property through the Assignment of Rents.

198.     The equities support the enforcement of the agreements in that, among other things, Hillcrest has approved the additional funding, and there is no basis to proceed with a fraudulent scheme to seize the rents from the Hidden Ridge Project.

199.     Hidden Ridge will suffer damages, and an injustice will result, if the representations of Hillcrest are not enforced and Hillcrest is allowed to repudiate its representations and promises to Hidden Ridge.

200.     Hidden Ridge has been damaged by Hillcrest's breach of the agreements.

WHEREFORE, defendant Hidden Ridge Development Company respectfully requests that the Court enter Judgment on Count V of the Counterclaim in favor of Hidden Ridge, and against Hillcrest Bank, in an amount in excess of $100,000, the exact amount to be proven at trial; for prejudgment and post-judgment interest as provided by law; for Winterberry's costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT VI – PROMISSORY ESTOPPEL (Cordsen and the Trust)
### (Against Hillcrest and LaBoda)

201.    Defendants incorporate paragraphs 1 through 200 above.

202.    As set out in paragraphs 1 through 163, Hillcrest and Cordsen and the Trust reached agreements that had clear and definitive terms to, among other things, providing the Additional Collateral in exchange for that collateral being released in two months after Hillcrest satisfied its regulators concerning the Arizona golf course development, for the application of the proceeds from the sale of the Lake Home, and to hold the Hidden Ridge property in trust under the deeds of trust.

203.    Hidden Ridge reasonably relied upon the representations of Hillcrest that Additional Collateral would be released in two months, application of the proceeds from the sale of the Lake Home, and that Hillcrest would not breach the agreements by declaring a default and attempting to seize the Personal Home.

204.    The equities support the enforcement of the agreements in that among, other things, Hillcrest has held the Additional Collateral for more than two months without release and proceed with a fraudulent scheme to seize the Personal Home through a Trustee's Sale.

205.    Cordsen and the Trust will suffer damages, and an injustice will result, if the representations of Hillcrest are not enforced and Hillcrest is allowed to repudiate its representations and promises to Cordsen and the Trust.

206.    Cordsen and the Trust been damaged by Hillcrest's breach of the agreements.

WHEREFORE, defendant Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count V of the Counterclaim in

favor of Cordsen and the Trust, and against Hillcrest Bank and LaBoda, in an amount in excess of $1,000,000, the exact amount to be proven at trial; for prejudgment and post-judgment interest as provided by law; for Cordsen's and the Trust's costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT VII – DECLARATORY JUDGMENT (Hidden Ridge, Winterberry, Cordsen and the Trust on the Alleged Notes, Loan Agreements, Modifications, Guaranties, and Deeds of Trust)
### (Against Hillcrest and LaBoda)

207.    Defendants incorporate paragraphs 1 through 206 above.

208.    As set out in paragraphs 1 through 163, the Defendants, at Hillcrest's request, signed documents that Hillcrest prepared generally purporting to be and described as promissory notes, loan agreements, guaranties, and deeds of trust, including, without limitation, those identified in Hillcrest's Complaint and those identified above.

209.    Hillcrest used fraudulent means to obtain numerous notes, loan agreements, modifications, guaranties, deeds of trust, and other documents that Defendants signed.

210.    None of the documents purporting to be notes, loan agreements, modifications, guaranties, or deeds of trust, including, without limitation, those identified in this Counterclaim, are enforceable security agreements, notes, loan agreements, guaranties or deeds of trust binding the Defendants, including, without limitation, any alleged default provisions or acceleration provisions.

WHEREFORE, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter a Declaratory Judgment on Count VI of the Counterclaim in

favor of the Defendants, and against Hillcrest Bank and LaBoda, finding that certain documents identified in Hillcrest's Complaint and this Counterclaim are not enforceable security agreements, notes, loan agreements, guaranties, and deeds of trust, nor are they binding on the Defendants, including, without limitation, any alleged default provisions or acceleration provisions; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT VIII – FRAUDLENT INDUCEMENT (the Winterberry loan, the Hidden Ridge Loans, and Cordsen and the Trust on the Additional Collateral) (Against Hillcrest and Rice)

211.    Defendants incorporate paragraphs 1 through 210 above.

212.    Winterberry, Cordsen, and the Trust (collectively, the "**Winterberry Defendants**") entered into the Winterberry loan (the "**Winterberry Loan**"), including, without limitation, notes, loan agreements, modifications, guaranties, modification of the guaranties, deeds of trust, and other documents that these defendants signed (the "**Winterberry Loan Documents**").

213.    Hidden Ridge and Cordsen entered into the Hidden Ridge loans (the "**Hidden Ridge Loans**"), including, without limitation, notes, loan agreements, modifications, guaranties, modification of the guaranties, deeds of trust, and other documents that these defendants signed (the "**Hidden Ridge Loan Documents**").

214.    The Defendants entered into the Winterberry Loan and the Hidden Ridge Loans based on Hillcrest's representations to the Defendants, which Hillcrest intended that the Defendants rely upon, including, without limitation, that Hillcrest:  a) would fund all expenditures for the Winterberry Project; b) would fund all expenditures for the

Barnhart and Thorpe project so that the Winterberry Project would have access to roads and utilities; c) would fund all construction in the Hidden Ridge Project; d) would make 100%, no cost loans to Winterberry for the Winterberry Project and Hidden Ridge on the Hidden Ridge Project that would cover all development costs for the projects and an interest reserve for all interest payments based on the strong capital position of Hillcrest and the course of dealing and practice between Hillcrest and Cordsen and his entities dating back more than 15 years; e) was not under increasing scrutiny from banking regulators that would have an impact on Hillcrest's ability to perform agreements with Cordsen and his entities; f) release the Additional Collateral that Cordsen and the Trust pledged to Hillcrest within two months of Hillcrest's receipt of the Additional Collateral; and g) affirmed at all times to the Defendants that Hillcrest was capable of performing on the agreements between the parties.

215.    Hillcrest knew that the statements in paragraph 214 of this Counterclaim, and the statements identified in paragraphs 1 through 163, were false, and intended to deceive the Defendants in order to induce Winterberry to enter into the Winterberry Loan and Cordsen and the Trust to enter into the original guaranties for the Winterberry Loan and the Hidden Ridge Loans, together with modifications to the Defendants' agreements, including, without limitation, modifications to the Winterberry Loan and the Hidden Ridge Loans and the pledge of the Additional Collateral.

216.    Further, Hillcrest, in order to induce the Defendants to take the actions more fully described above, either falsely represented or failed to disclose material information to the Defendants, including, without limitation, the following: a) Hillcrest made false statements to the Winterberry Defendants regarding the Winterberry Loan and

the Winterberry Loan Documents when Hillcrest's true intent was to reduce the principal amounts of the Winterberry Loan, and the loans to Barnhart and Thorpe, knowing that Winterberry would be unable to complete the Winterberry Project; b) Hillcrest made false statements to Hidden Ridge and Cordsen concerning modification of the loans and new loans for additional construction when Hillcrest's true intent was to call all the loans to Hidden Ridge so that Hillcrest could obtain the value and cash flow from the Hidden Ridge Project; c) Hillcrest made false statements to Cordsen and the Trust regarding the Additional Collateral when Hillcrest's true intent was to keep, and liquidate, the Additional Collateral; d) Hillcrest made false statements to Cordsen regarding the application of the proceeds from the sale of the Lake Home when Hillcrest's true intent was to apply the proceeds in a different manner to improve its position on the Personal Home, which Hillcrest further intended to foreclose upon; e) Hillcrest asserted that the Defendants were in default when funds were still available under the original loan agreement on the Winterberry loan and the loan to Barnhart and Thorpe that would allow Winterberry to complete the development of the Winterberry Project and Hillcrest, through its loan committee, had approved financing for additional building construction in the Hidden Ridge Project; f) Hillcrest made false statements to the Defendants regarding Hillcrest making 100%, no cost loans on Cordsen's projects when Hillcrest's true intent was to get the Defendants to obtain the loans and then require the Defendants to make substantial principal pay downs for each modification; g) Hillcrest made false statements to the Defendants regarding Hillcrest making 100%, no cost loans on Cordsen's projects when Hillcrest's true intent was to obtain the Additional Collateral to improve its position on the Winterberry Loan under the guise of assisting Hillcrest in the

Arizona golf course debacle; h) Hillcrest reneged on agreements to provide 100%, no cost loans on the Winterberry Project and the Hidden Ridge Project; i) Hillcrest threatened it would pursue actions against Cordsen if he would not concede to pledging the Additional Collateral or make huge, additional pay downs of principal on the Winterberry Loan and the Hidden Ridge Loans when Hillcrest knew that it had procured the agreements by fraudulent means; j) Hillcrest never advised the Defendants that the bank would change its custom and practice on the Winterberry Loan and the Hidden Ridge Loans if the market for residential housing deteriorated; k) Hillcrest never advised the Defendants that the bank was encountering increased loan loss reserves and write-off due to bad loans that impacted Hillcrest's ability to perform its agreements with the Defendants; l) Hillcrest never disclosed to the Defendants that it was under increasing scrutiny from regulators that impacted the bank's ability to perform its agreements with the Defendants; and m) Hillcrest, at all times, continued to affirm to the Defendants that the bank was capable of performing on the agreements between the parties, and yet did not intend to do so.

217. The Defendants signed documents to accommodate Hillcrest based on the bank's material representations and failure to disclose material information.

218. As a direct and proximate result of their justifiable reliance on the representations and concealment of Hillcrest, Defendants have suffered a pecuniary loss, the exact amount of which will be proven at trial.

219. Hillcrest's conduct was outrageous because of its evil motive or reckless or callous indifference to the rights of others, including the Defendants. Consequently,

Defendants should receive an award of punitive damages against Hillcrest to punish and deter it, and others, from like conduct in the future.

220.    In the alternative, the Court should rescind all of the Winterberry Loan Documents and Hidden Ridge Loan Documents and order that Hillcrest return all of the Additional Collateral, or the fair market value of the properties, and refund all cash payments that Defendants made pursuant to their agreements with Hillcrest with Defendants returning the projects to Hillcrest.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter a Declaratory Judgment on Count VIII of the Counterclaim in favor of the Defendants, and against Hillcrest Bank, finding that the Hidden Ridge Loan Documents and Winterberry Loan Documents are void or voidable, or in the alternative, for a sum that is fair and reasonable, plus legal interest on this amount, punitive damages, for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

### COUNT IX – FRAUD (the Winterberry Loan, the Hidden Ridge Loans, and Cordsen and the Trust on the Additional Collateral) (Against Hillcrest, Rice, Forgey, and Wheeler)

221.    Defendants incorporate paragraphs 1 through 220 above.

222.    Hillcrest, Rice, Forgey, and Wheeler either falsely represented or failed to disclose material information to the Defendants, including, without limitation, that information set forth above.

223.     Hillcrest, Rice, Forgey, and Wheeler at the time they persuaded the Defendants to pledge the Additional Collateral, enter into the Winterberry Loan, enter into modifications of the Hidden Ridge Loans and agreed with Defendants on the application of the proceeds from the sale of the Lake Home, and on numerous other occasions, made additional false statements or failed to disclose material information to the Defendants, which is set out in part above and includes, without limitation, the following: a) that Hillcrest would provide all cash necessary to fund the Winterberry Project and the Barnhart and Thorpe project so that Winterberry could complete its project with the necessary ingress and egress and utilities; b) that Hillcrest would provide all cash necessary to fund the completion of the Hidden Ridge Project; c) that Hillcrest would release the Additional Collateral two months after it was pledged; d) that Hillcrest, after not honoring its agreement to release the Additional Collateral, agreed that it would apply the proceeds from the sale of the Lake Home pursuant to the terms of the parties' agreement; and e) that Hillcrest had such a strong capital and equity position that the bank could make the Winterberry Loans and Hidden Ridge Loans and could make these 100%, no cost loans.

224.     Hillcrest knew that the statements in paragraph 223 of this Counterclaim, and the statements identified in paragraphs 1 through 163, were false, and intended to deceive the Defendants to enter into the agreements.

225.     The Defendants signed documents to accommodate Hillcrest based on the bank's material representations and failure to disclose material information.

226.     All of these representations and undisclosed matters were material to the Defendants.

227. Hillcrest, Rice, Forgey, and Wheeler for the purpose of inducing the Defendants to invest in the Winterberry Project and Hidden Ridge Project and to obtain funding from Hillcrest, and intending that Defendants would rely upon both the statements that Hillcrest, Rice, Forgey, and Wheeler made as well as failure to disclose adverse facts regarding Hillcrest's business represented to Defendants that it wanted Defendants business to the exclusion of other lenders with whom Cordsen and some of his entities had relationships.

228. The representations and failure to disclose material facts by Hillcrest, Rice, Forgey, and Wheeler were false, and they knew the representations were false or without knowledge as to their truth or falsity, when in fact they were false.

229. Defendants relied on the representations of Hillcrest, Rice, Forgey, and Wheeler in entering into agreements with Hillcrest.

230. Hillcrest, Rice, Forgey, and Wheeler intended to deceive Defendants.

231. Defendants acted in reliance on the truth of the representations and were justified in their reliance on the representations.

232. As a direct and proximate result of the false representations and failure to disclose material information by Hillcrest, Rice, Forgey, and Wheeler, Defendants have suffered a pecuniary loss, the exact amount of which will be proven at trial.

233. Hillcrest's conduct was outrageous because of its evil motive or reckless or callous indifference to the rights of others, including the Defendants. Consequently, Defendants should receive an award of punitive damages against Hillcrest to punish and deter it, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count IX of the Counterclaim in favor of the Defendants, and against Hillcrest, Rice, Forgey, and Wheeler, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT X – FRAUDULENT NONDISCLOSURE
### (Against Hillcrest, Wheeler, and the Directors)

234.    Defendants incorporate paragraphs 1 through 233 above.

235.    Throughout the development of the relationship between Hillcrest and Cordsen and his entities, including, without limitation, the Winterberry Project and Hidden Ridge Project, a relationship of trust and confidence existed between the Defendants and Hillcrest, Rice, Forgey, and Wheeler on the subject of Defendants' relationships and completion of projects that gave rise to a duty of disclosure by Hillcrest, Rice, Forgey, Wheeler, and the Directors.

236.    While this relationship existed, Hillcrest, Rice, Forgey, Wheeler, and the Directors failed to disclose material information to Defendants, including, without limitation, the information set forth above in this Counterclaim.

237.    All of these undisclosed matters were material to the Defendants.

238.    Hillcrest, Rice, Forgey, Wheeler, and the Directors for the purpose of inducing the Defendants obtain financing from Hillcrest and intending that Defendants

would rely upon Hillcrest's failure to disclose adverse facts regarding the bank's business, represented to Defendants that Hillcrest wanted the Defendants' business and desired that Defendants borrow money from Hillcrest to the exclusion of other lenders with whom Cordsen and some of his entities had relationships.

239.     Hillcrest, Rice, Forgey, Wheeler, and the Directors knowingly failed to make the disclosures.

240.     Hillcrest, Rice, Forgey, Wheeler, and the Directors intended to deceive Defendants by withholding the information.

241.     Defendants acted in reliance on the failure of Hillcrest, Rice, Forgey, Wheeler, and the Directors to disclose, and Defendants were justified in their reliance.

242.     As a direct and proximate result of the conduct by Hillcrest, Rice, Forgey, Wheeler, and the Directors, Defendants have suffered a pecuniary loss, the exact amount of which will be proven at trial.

243.     The conduct of Hillcrest, Rice, Forgey, Wheeler, and the Directors was outrageous because of its evil motive or reckless or callous indifference to the rights of others, including the Defendants.  Consequently, Defendants should receive an award of punitive damages against Hillcrest, Rice, Forgey, Wheeler, and the Directors to punish and deter it, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count X of the Counterclaim in favor of the Defendants, and against Hillcrest, Rice, Forgey, Wheeler, and the Directors, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive

damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT XI – NEGLIGENT MISREPRESENTATIONS
### (Against Hillcrest, Rice, Forgey, and Wheeler)

244.    Defendants incorporate paragraphs 1 through 243 above.

245.    Hillcrest, Rice, Forgey, and Wheeler negligently supplied or failed to disclose information to Defendants, including, without limitation, that information set forth above.

246.    Hillcrest, Rice, Forgey, and Wheeler also negligently supplied, or failed to disclose, at the time they persuaded the Defendants to pledge the Additional Collateral, enter into the Winterberry Loan, enter into modifications of the Hidden Ridge Loans and agreed with Defendants on the application of the proceeds from the sale of the Lake Home, and on numerous other occasions, made additional false statements or failed to disclose material information to the Defendants, including, without limitation, all information or statements set forth above.

247.    Hillcrest, Rice, Forgey, and Wheeler had a financial interest in supplying or withholding the information.

248.    Hillcrest, Rice, Forgey, and Wheeler supplied the false information to influence the transactions for which the information was supplied; and Hillcrest, Rice, Forgey, and Wheeler knew that the Defendants who received the information intended the information to influence the transactions for which Hillcrest, Rice, Forgey, and Wheeler supplied the information.

249.    Hillcrest, Rice, Forgey, and Wheeler provided the information to Defendant concerning financing of the transactions by Hillcrest, Rice, Forgey, and Wheeler for which the information was supplied in the course of the business of Hillcrest and Wheeler.

250.    Due to the failure of Hillcrest, Rice, Forgey, and Wheeler to exercise reasonable care, the information that they supplied to induce Defendants to enter into the transactions with Hillcrest, Rice, Forgey, and Wheeler was false.

251.    The negligently supplied information was a proximate cause of Defendants' damage.

252.    Hillcrest, Rice, Forgey, and Wheeler provided the information to Defendants for their guidance in their businesses and to induce Defendants to forgo from doing business with Hillcrest's competitors.

253.    Defendants acted in reliance on the truth of the information supplied and were justified in relying on the information.

254.    As a direct and proximate result of Defendants' reliance on the information that Hillcrest, Rice, Forgey, and Wheeler provided, Defendants have suffered a pecuniary loss, the exact amount of which will be proven at trial.

255.    The conduct of Hillcrest, Rice, Forgey, and Wheeler was outrageous because of their evil motive or reckless or callous indifference to the rights of others, including the Defendants. Consequently, Defendants should receive an award of punitive damages against Hillcrest and Wheeler to punish and deter them, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XI of the Counterclaim in favor of the Defendants, and against Hillcrest and Wheeler, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT XII – BREACH OF GOOD FAITH AND FAIR DEALING
### (Against Hillcrest, Rice, Forgey, Wheeler, and LaBoda)

256.    Defendants incorporate paragraphs 1 through 255 above.

257.    Defendants entered into certain agreements with Hillcrest, Rice, Forgey, and Wheeler, as more fully set forth above.

258.    In connection with said agreements that Defendants and Hillcrest, Rice, Forgey, and Wheeler entered into, Hillcrest, Rice, Forgey, and Wheeler had a duty to act in good faith and deal fairly in the performance and enforcement of all agreements.

259.    Among other things, Hillcrest, Rice, Forgey, and Wheeler engaged in the actions set forth in detail above.

260.    Hillcrest, Rice, Forgey, and Wheeler, at the time they persuaded Defendants to invest in the Winterberry Project and modify the Hidden Ridge Project, and on numerous occasions thereafter, made additional false statements or failed to disclose material information to Defendants, which is set forth in detail above.

261.    Contrary to the representations that Hillcrest, Rice, Forgey, and Wheeler made, Hillcrest, Rice, Forgey, Wheeler, and LaBoda breached their duty of good faith and fair dealing by, among other things, engaging in the conduct described in detail above.

262.    As a direct result of the breach of the duty of good faith and fair dealing by Hillcrest, Rice, Forgey, Wheeler, and LaBoda, Defendants have been damaged.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XII of the Counterclaim in favor of the Defendants, and against Hillcrest, Rice, Forgey, Wheeler, and LaBoda, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT XIII – TORT OF BREACH OF GOOD FAITH AND FAIR DEALING
### (Against Hillcrest, Rice, Forgey, Wheeler, and LaBoda)

263.    Defendants incorporate paragraphs 1 through 262 above.

264.    There existed a special relationship between Cordsen and his entities and Hillcrest, Rice, Forgey, Wheeler, and LaBoda arising out of the fiduciary responsibilities of Hillcrest, Rice, Forgey, Wheeler, and LaBoda to Cordsen and his entities.

265.    Defendants entered into certain agreements with Hillcrest, Rice, Forgey, Wheeler, and LaBoda, as more fully set forth above.

266. In connection with said agreements that Defendants and Hillcrest, Rice, Forgey, and Wheeler entered into, Hillcrest, Rice, Forgey, and Wheeler had a duty to act in good faith and deal fairly in the performance and enforcement of all agreements.

267. Among other things, Hillcrest, Rice, Forgey, Wheeler, and LaBoda engaged in the actions set forth in detail above.

268. Hillcrest, Rice, Forgey, and Wheeler, at the time they persuaded Defendants to invest in the Winterberry Project and modify the Hidden Ridge Project, and on numerous occasions thereafter, made additional false statements or failed to disclose material information to Defendants, which is set forth in detail above.

269. Contrary to the representations that Hillcrest, Rice, Forgey, and Wheeler made, Hillcrest, Rice, Forgey, Wheeler, and LaBoda breached their duty of good faith and fair dealing by, among other things, engaging in the conduct described in detail above.

270. As a direct result of the breach of the duty of good faith and fair dealing by Hillcrest, Rice, Forgey, Wheeler, and LaBoda, Defendants have been damaged.

271. The conduct of Hillcrest, Rice, Forgey, Wheeler, and LaBoda was outrageous because of their fraud, evil motive, or reckless or callous indifference to the rights of others, including the Defendants. Consequently, Defendants should receive an award of punitive damages against Hillcrest, Rice, Forgey, Wheeler, and LaBoda to punish and deter them, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XIII of the Counterclaim in favor of the

Defendants, and against Hillcrest, Rice, Forgey, Wheeler, and LaBoda, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT XIV – BREACH OF FIDUCIARY DUTY
### (Against Hillcrest, Rice, Forgey, Wheeler, and LaBoda)

272. Defendants incorporate paragraphs 1 through 271 above.

273. Throughout the relationship between Cordsen and his entities and Hillcrest, a fiduciary relationship existed between Cordsen and his entities and Hillcrest, Rice, Forgey, Wheeler, and LaBoda of trust and confidence on the subject of Cordsen's relationship and completion of projects.

274. Hillcrest, Rice, Forgey, Wheeler, and LaBoda were under a duty to act for the benefit of Cordsen and his entities in that Hillcrest, Rice, Forgey, Wheeler, and LaBoda were required to take no action that directly benefited Hillcrest and harmed Cordsen or his entities, including, without limitation, those actions set forth above.

275. Hillcrest, Rice, Forgey, and Wheeler, at the time they persuaded Defendants to invest in the Winterberry Project and modify the Hidden Ridge Project, and on numerous occasions thereafter, made additional false statements or failed to disclose material information to Defendants, which is set forth in detail above.

276. Cordsen and his entities placed confidence in Hillcrest, Rice, Forgey, and Wheeler and Hillcrest exercised domination and influence over Cordsen and his entities.

277.     Hillcrest, Rice, Forgey, and Wheeler used the confidence that Defendants placed in Hillcrest, Rice, Forgey, and Wheeler in an effort to dominate the Defendants' business.

278.     By these actions and inactions, Hillcrest, Rice, Forgey, Wheeler, and LaBoda breached their fiduciary duty to the Defendants.

279.     The breach of these fiduciary duties is the proximate cause of Defendants' damages.

280.     The conduct of Hillcrest, Rice, Forgey, Wheeler, and LaBoda was outrageous because of their fraud, evil motive, or reckless or callous indifference to the rights of others, including the Defendants.  Consequently, Defendants should receive an award of punitive damages against Hillcrest, Rice, Forgey, Wheeler, and LaBoda to punish and deter them, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XIV of the Counterclaim in favor of the Defendants, and against Hillcrest, Rice, Forgey, Wheeler, and LaBoda, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT XV – CONVERSION
### (Against Hillcrest)

281.     Defendants incorporate paragraphs 1 through 281 above.

282. Hillcrest obtain certain proceeds from the sale of the Lake Home even though Hillcrest, through Rice, represented to Cordsen that the bank would release the Lake Home as collateral two months from the date of pledge.

283. The agreement between Cordsen and Hillcrest specified the application of the proceeds receive from the sale of the Lake Home.

284. Hillcrest wrongfully appropriated the sale proceeds and applied these proceeds in a manner inconsistent with the agreement between Cordsen and Hillcrest by, among other things, not applying the proceeds to the Winterberry Project and paying off the first lien on the Personal Home and then increasing Cordsen's liability through an increased lien amount.

285. Hillcrest deprived Cordsen of his right to possess the sale proceeds.

286. Hillcrest's wrongful appropriation and application of the sale proceeds has caused damage to the Defendants.

287. The conduct of Hillcrest was outrageous because of its evil motive, or reckless or callous indifference to the rights of others, including the Defendants. Consequently, Defendants should receive an award of punitive damages against Hillcrest to punish and deter it, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XV of the Counterclaim in favor of the Defendants, and against Hillcrest Bank, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and

expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT XVI – NEGLIGENT OR RECKLESS FAILURE TO SUPERVISE
### (Against Hillcrest and Directors)

288.    Defendants incorporate paragraphs 1 through 288 above.

289.    Hillcrest and the Directors had a duty to supervise its employees and officers in the course of their activities on behalf of Hillcrest in connection with Hillcrest's communications and transactions with Cordsen and his entities.

290.    Hillcrest and the Directors failed to supervise its employees in this regard by, among other things, failing to review the actions of Rice, Forgey, and Wheeler in declaring a default before advancing all of the funds to Winterberry in connection with the Winterberry Project as Hillcrest agreed to do; failure to review the actions of Rice, Forgey, and Wheeler in their decision not to release the Additional Collateral and misappropriate and misapply the funds from the sale of the Lake Home; and failure to supervise the reckless actions and communications of Rice, Forgey, and Wheeler to Cordsen and his entities, including, without limitation, those actions set forth above.

291.    The failure of Hillcrest and the Directors to supervise was negligent or reckless and with malice.

292.    As a direct and proximate result of the failure of Hillcrest and the Directors to supervise, Defendants have been damaged.

293.    The conduct of Hillcrest and the Directors was outrageous because of their fraud, evil motive, or reckless or callous indifference to the rights of others, including the Defendants. Consequently, Defendants should receive an award of punitive damages

against Hillcrest and the Directors to punish and deter them, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XVI of the Counterclaim in favor of the Defendants, and against Hillcrest and the Directors, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

<div align="center">

### COUNT XVII – CIVIL CONSPIRACY
**(Against all Counterclaim Defendants)**

</div>

294.   Defendants incorporate paragraphs 1 through 294 above.

295.   Hillcrest along with Rice, Forgey, Wheeler, LaBoda, and the Directors (collectively, the "Conspiring Parties") conspired with an object to be accomplished to among other things commit fraud, negligent misrepresentation, negligently and maliciously breaching agreements with Defendants, breaching fiduciary duties to the Defendants, and failing to supervise employees and agents of Hillcrest among other things.

296.   The Conspiring Parties had a meeting of the minds on the course of action to among other things commit fraud, negligent misrepresentation, negligently and maliciously breaching agreements with Defendants, breaching fiduciary duties to the

Defendants, and failing to supervise employees and agents of Hillcrest among other things.

297. As a result of the actions of the Conspiring Parties set forth above, Defendants have been damaged.

298. The conduct of the Conspiring Parties was outrageous because of their fraud, evil motive, or reckless or callous indifference to the rights of others, including the Defendants. Consequently, Defendants should receive an award of punitive damages against the Conspiring Parties to punish and deter them, and others, from like conduct in the future.

WHEREFORE, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XVI of the Counterclaim in favor of the Defendants, and against all Counterclaim Defendants, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation, attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT XVII – PRIMA FACIA TORT
### (Against all Counterclaim Defendants)

299. Defendants incorporate paragraphs 1 through 298 above.

300. The Conspiring Parties undertook intentional actions, as set forth above, with the intent to injure and harm the Defendants.

301. As a direct and proximate result of the Conspiring Parties intent to injure and harm the Defendants, the Conspiring Parties, in fact, injured, harmed, and damaged the Defendants.

302. There was no justification, or any purported by the Conspiring Parties, was insufficient justification for their actions.

303. The nature and seriousness of the Conspiring Parties' actins in harming Defendants; any interest that the Conspiring Parties could have promoted; the character and means used by the Conspiring Parties; and the improper motives of the Conspiring Parties all weigh in favor of finding the Conspiring Parties liable.

304. Defendants have been injured and damaged as a direct result of the Conspiring Parties' actions.

305. The conduct of the Conspiring Parties was outrageous because of their fraud, evil motive, or reckless or callous indifference to the rights of others, including the Defendants. Consequently, Defendants should receive an award of punitive damages against the Conspiring Parties to punish and deter them, and others, from like conduct in the future.

**WHEREFORE**, defendants Hidden Ridge Development Company, Winterberry Development, LLC, Jack H. Cordsen and the Jack H. Cordsen Trust UTA respectfully request that the Court enter Judgment on Count XVII of the Counterclaim in favor of the Defendants, and against all Counterclaim Defendants, jointly and severally, in an amount that is fair and reasonable in excess of $1,000,000; for punitive damages in an amount that is fair and reasonable; for prejudgment and post-judgment interest as provided by law; for Defendants' costs and expenses incurred herein, including, without limitation,

attorneys' fees and expenses; and for such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Defendants in the above-captioned action hereby demand a jury trial on all issues so triable.

<div style="margin-left: 40%;">

Respectfully submitted,

MITCHELL & ASSOCIATES, L.C.


By:   /s/ David L. Zeiler
      David L. Zeiler        MO #46806
      1600 NE Coronado Drive, Ste. 242
      Blue Springs, Missouri 64014
      Telephone: (816) 224-1100
      Telecopier: (816) 224-1101

**ATTORNEYS FOR DEFENDANTS/
COUNTERCLAIMANTS**

</div>

## **CERTIFICATE OF SERVICE**

I certify that on November 24, 2010, I served a true and accurate copy of the foregoing via first class U.S. Mail, postage prepaid, on:

Kelly A. Campbell
Spencer Fane Britt & Browne LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140

ATTORNEYS FOR HILLCREST BANK

<div style="margin-left: 40%;">

 /s/ David L. Zeiler
An Attorney for Defendants/
Counterclaimants

</div>